GAS LIGHT COMPANY OF THE CITY OF NEW BRUNSWICK and PUBLIC SERVICE GAS COMPANY

*v.*

BOROUGH OF SOUTH RIVER.

[Submitted August 2d, 1910. Decided August 9th, 1910.]

1. Where an act conferring power on a gas light corporation has been in force forty years, and gas mains have been laid under its authority for nearly thirty years with the acquiescence of, the public, and such acquiescence has encouraged the corporation to extend its gas mains beyond the city limits for the accommodation of the people residing there, the court, on a motion for a preliminary injunction to restrain interference with the laying of mains beyond the city limits, will not hold that the right of the corporation to lay the mains does not exist.

2. The power conferred on a gas light corporation by an act authorizing it to continue and lay its gas mains beyond the limits of a city and within designated counties as it may from time to time be deemed expedient is not exceeded by the corporation extending its mains to a borough in one of the counties and into territory which has never been supplied with gas.

3. The question whether a gas light corporation suing to restrain a municipality from interfering with the laying of gas mains has by lapse of time lost the right to lay the mains will not be decided on a motion by the corporation for a preliminary injunction.

4. The forfeiture of a corporate franchise for non-user can only be effectuated at the suit of the state.

5. An act and its supplements are construed as one law.

6. *Const. Amend. 1875 art. 4* § 7 ¶ *11*, prohibiting the passage of local or special laws granting to any corporation any exclusive privilege, does not affect local or special laws in operation before its adoption, and hence does not apply to a special statute granting to a gas light corporation the right to extend its mains into described territory.

7. The object of *Const. Amend. 1875 art. 4* § 7 ¶ *11*, prohibiting the passage of local or special laws granting to any corporation exclusive privileges, is to prevent the legislature from granting corporate powers to one set of applicants and refusing to another set similar corporate powers.

8. Act April 21st, 1876 (*P. L. 1876 p. 235*), making it lawful for any corporation to file before the expiration of its charter a certificate declaring its purpose that the period of its existence shall be extended not exceeding a specified time, &c., must be so construed as to effectuate the purpose of *Const. Amend. 1875 art. 4* § 7 ¶ *11*, prohibiting the passage

of any local or special law granting to any corporation exclusive privileges, and must not be construed so as to give to any one corporation any special privilege which it does not give to any other corporation applying therefor.

9. Under *P. L. 1876 p. 309*, authorizing the formation of gas light corporations, and act April 21st, 1876 (*P. L. 1876 p. 235*), authorizing a corporation to extend its period of existence by filing with the secretary of state a certificate, a gas light corporation authorized to continue and lay its mains beyond the limits of a city and within designated counties, filing with the secretary of state a certificate declaring its desire that the period of its existence shall be extended, does not thereby acquire any special privileges not procurable by other corporations; but, if the certificate vests exclusive privileges in the corporation. the certificate is void as to the exclusive privileges.

10. The power conferred by the Borough act (*P. L. 1897 p. 285*), empowering borough councils to pass ordinances prescribing the manner in which corporations shall exercise any privilege granted in the use of any street or in digging up the same for any purpose, is a mere regulative one, and does not authorize an arbitrary refusal to permit a gas light corporation to lay its mains in the streets of the city, and the arbitrary refusal of the mayor of a city to grant such a permit amounts to a prohibition and is unauthorized.

11. Where a corporation suing to restrain a municipality from interfering with the laying of gas mains asks for a preliminary injunction, the court on granting the injunction will require the corporation to file a stipulation consenting that the court on the municipality succeeding on final hearing may require the corporation to remove the work done by it pending the litigation.

---

On motion for preliminary injunction.

The Gas Light Company of the City of New Brunswick, one of the complainants, was incorporated by an act of the legislature approved March 19th, 1851; the title of the act was "An act to incorporate the Gas Light Company of the City of New Brunswick." It authorized the company to manufacture and sell gas for the purpose of lighting the streets, buildings, manufactories and other places situated in New Brunswick, and to lay down gas pipes and erect posts and burners in the streets, alleys, lanes, avenues or public grounds thereof, and to do all things necessary to light the said city and the dwellings, stores and other places situated therein. The act by its terms was to continue in force for thirty years. The company therefore was given the franchise until March 19th, 1881.

On February 3d, 1870, the legislature passed an act entitled "A supplement to 'An act to incorporate the Gas Light Company of the City of New Brunswick,' approved March nineteenth, eighteen hundred and fifty-one." This act recites that it was represented that certain persons residing outside of the corporate limits of the city of New Brunswick were desirous of being supplied with gas by the New Brunswick company, and that they desired that the company be invested with power so to supply them. Thereupon the company was authorized to continue and lay its gas mains so far beyond the corporate limits of the city of New Brunswick and within the counties of Middlesex and Somerset as they might from time to time deem expedient and necessary to supply gas to the persons who then or thereafter might reside outside of the said corporate limits, and to erect gas posts and burners, supply gas, and charge for the same in as full and ample a manner as they had authority under their charter to do the same thing in the city of New Brunswick. On September 28th, 1875, the amended constitution went into effect, whereby the legislature was prohibited from passing private, local or special laws granting to any corporation, association, or individual any exclusive privilege, immunity or franchise whatsoever, and directing it to pass general laws providing for such cases. The legislature was thereby prohibited from passing any special act which conferred corporate powers, and they were directed to pass general laws under which corporations might be organized and corporate powers of every nature be obtained. On April 21st, 1876, the legislature passed an act by which it was provided that it should be lawful for any corporation theretofore or thereafter created under or by virtue of any law of this state, at any time before the expiration of its charter or of the period named in its certificate of organization, to file in the office of the secretary of state a certificate under its common seal, attested by the signature of its presiding officer, declaring its desire that the period of its existence as such corporation should be extended for any time therein mentioned not exceeding fifty years, and that upon making and filing such certificate the period of the existence of such corporation should be extended as declared in such certificate as fully as if the said period had been named in the original

charter or certificate of organization of such corporation. On May 29th, 1878, the New Brunswick company filed in the office of the secretary of state a certificate of the character provided for in the act of 1876 for the object and with the purpose of extending the duration of its existence for a period of fifty years from the time of the expiration of its original charter. Subsequently, the Public Service Corporation of New Jersey was organized, to which corporation the gas company leased all its property and franchises except its franchise to be a corporation, which leased rights subsequently became vested in another corporation called the Public Service Gas Company, which is one of the complainants in this suit.

The complainants now desire to lay gas mains and gas pipes within the limits of the borough of South River, a borough which is located within the boundaries of the county of Middlesex, and they made application to the mayor for permission to open the streets and highways for that purpose. This application was in compliance with the requirements of an ordinance of the borough which has been in operation since July 19th, 1905. Section 1 of the ordinance provides that no corporation or individual shall dig up a street or road for any purpose whatever without a permit in writing from the mayor, and that the mayor may refuse such permit unless the applicants shall enter into a bond to the borough in the penal sum of $1,000, with surety, to be approved by the mayor, conditioned that the applicant will carefully make such digging or excavation and be responsible for any damage or injury that may occur to anyone by reason of neglect or carelessness in prosecuting the work, and that they will properly refill and ram and puddle the earth and suitably restore the pavement and leave the pavement and street in as good condition as it was before. The mayor refused to grant the permission sought by the complainants. No reason whatever is assigned for his action. The complainants then proceeded with the contemplated work, but were interfered with by the borough authorities, and they now seek an injunction to prevent the borough and its officers from interfering with or preventing the laying of gas mains beneath the surface of the streets of the borough.

*Mr. Frank Bergen,* for the motion.

*Mr. Alan H. Strong, contra.*

HOWELL, V. C.

The following objections are interposed to the relief prayed by the complainant: First, that the title of the act of 1870 does not express the object which the legislature had in view, namely, the extension of the powers of the corporation beyond the limits of the city of New Brunswick. I do not think the defendant can prevail on this point. The act has been in force for forty years, and gas mains have been laid under its authority for nearly thirty years, during all of which time the public have acquiesced, and the complainant, by such acquiescence, has been induced and encouraged in the extension of its gas mains beyond the city limits for the accommodation of the people residing there. Under these circumstances, this court, on a preliminary motion, ought not to hold that the right does not exist. The question seems to be one which might very properly be litigated in the common law courts. There are, however, decisions which uphold the view of the complainant.

In *Gifford* v. *New Jersey Railroad Co., 10 N. J. Eq. (2 Stock.) 171,* the facts were that the Newark and Bloomfield Railroad Company was incorporated in 1852; it had authority to construct a railroad from some suitable place in Bloomfield township to intersect the Morris and Essex Railroad Company in Newark, and also to intersect the railroad of the New Jersey Railroad and Transportation Company. In 1853 a supplement was passed to this act authorizing the railroad company to bridge the Passaic river. The title to the supplement was "A supplement to an act entitled 'An act to incorporate the Newark and Bloomfield Railroad Company,' approved March 26th, 1852." It was said by the court with reference to the constitutional provision: "The design of this provision is declared to be to prevent improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other. The objects in that statute, however, are parts of the same enter-

prise and cannot be said to have any improper relation to each other."

In *Paterson Railway Co.* v. *Grundy, 51 N. J. Eq. (6 Dick.) 213,* this court passed upon a similar question. In that case the title of the original act was "An act to incorporate the Paterson and Little Falls Horse and Steam Railroad Company," and it conferred power to construct and operate a railway from some point in Paterson to Little Falls. A supplement thereto passed in 1870 had this title, "A supplement to 'An act to incorporate the Paterson and Little Falls Horse and Steam Railroad Company,' approved April 9th, 1866." This gave authority to the railway company to construct its railway longitudinally through certain designated streets in the city of Paterson. It was argued that this was unconstitutional for the reason that it violated the provision of the constitution above referred to. Concerning it, Vice-Chancellor Green says: "It is next claimed that the act of 1870 is void because the object of the act is not expressed in the title. It was argued that the object of the act is to confer upon the company named in the title authority to construct and operate a railroad in certain streets in the city of Paterson solely, whereas the title of the act refers to a horse and steam railroad company between Paterson and Little Falls. This idea is the result of construing the designation of a company by its name as the statement of the object of the act in its title. The object of the act was to confer additional privileges upon the company which was originally incorporated by the act of 1866 under the name mentioned in the title to the supplement. It was no more necessary to refer in the title to all the powers to be given by the supplement than it was to set out in detail every franchise granted to the corporation by its charter. The title to such acts were generally nothing more than to incorporate a company designating its corporate name. While it is true that no power could be granted by the supplement which would have been unconstitutional if incorporated in the original act, that argument does not invalidate the supplement because it would have been entirely competent for the legislature in 1866 to have granted under the original act the powers which are given by the supplement of 1870." The same principle was settled in the same case with re-

lation to the stringing of wires under the act of March 10th, 1892.

The next objection that is urged is that the act of 1870 does not purport to grant to the company the right to extend its mains throughout the counties of Middlesex and Somerset. The words granting the power referred to are much broader than they are in the *Madison Case* or the *Millville Case. Madison* v. *Morristown Gas Light Co., 65 N. J. Eq. (20 Dick.) 356; Millville Gas Co.* v. *Vineland Light Co., 72 N. J. Eq. (2 Buch.) 305.* In those cases the authority extended to the prescribed territory and its "vicinity." A much wider significance of the words used in this case is apparent at a glance. Here the company was authorized and empowered to continue and lay their gas mains so far beyond the corporate limits of the city of New Brunswick and within the counties of Middlesex and Somerset as they from time of time might deem expedient and necessary to supply gas to persons who then or thereafter might reside outside of the corporate limits. While there necessarily would have to be some limit to an extension of the gas mains and to the operations of the company, it does not seem to me that the limit has been exceeded by an extension to the borough of South River, across and into territory which has never been supplied with gas by this or any other company.

Another question raised is, that if the right now claimed for the company ever existed, it has been lost by lapse of time, and therefore cannot now be exercised. This also appears to be a question which should properly be litigated at law and not be decided on a mere motion. It is true that a corporation may forfeit its franchise by non-user, but such forfeiture can only be effectuated and declared by an action brought by the state on behalf of the public. In *Jersey City Gas Co.* v. *Dwight, 29 N. J. Eq. (2 Stew.) 242,* a private citizen was allowed to set up the invalidity of franchises that were claimed by a corporation; whether a municipal corporation may do so or whether it must be remitted to the public remedies is a question that I do not find it necessary to decide.

The principal question that was argued on the hearing of this motion related to the power of the gas company to exercise its

franchises beyond the limits of the city of New Brunswick. It was claimed on the part of the defendant that the original charter limited the operations of the company to that city; that the act of 1870 was unconstitutional because of its defective title; that the act of 1876 could not be so construed as to extend the operation of the act of 1870 (even though it were originally constitutional) beyond the period fixed in the original charter for its expiration; that if a construction contrary to this view should be made, then the act of 1876 will contravene the constitutional provision above quoted, for the reason that it would thus be made an instrument for extending a special privilege and would be equivalent to special legislation, and therefore inimical to the constitutional provision.

It is settled that an act and its supplements are to be construed as one law. *Van Riper* v. *Essex Public Road Board, 38 N. J. Law (9 Vr.) 23; Barnaby* v. *Bradley & Currier, 60 N. J. Law (31 Vr.) 158.*

It is likewise settled that the amended constitution did not affect local and special laws if they became operative before the adoption of the constitutional provision forbidding such laws. *Kirkpatrick* v. *New Brunswick, 40 N. J. Eq. (13 Stew.) 46; Stockton* v. *Central Railroad of New Jersey, 50 N. J. Eq. (5 Dick.) 52.*

We must, therefore, say that when the constitutional provision went into effect in September, 1875, it found the gas company with a charter which would expire March 19th, 1881, by which it had authority to extend its mains beyond the city of New Brunswick into the counties of Middlesex and Somerset. The adoption of the constitution did not affect the charter or any of the rights held under it, nor were the same affected by the act of 1876, except so far as that act must be held to operate as an amendment to the charter of the company. Coming then to May 29th, 1878, we find the gas company with its rights unimpaired by the constitutional provision, and with further corporate powers conferred upon it by the act of 1876, because it is undoubted that that act did confer corporate powers (*Grey* v. *Newark Plank Road Co., 65 N. J. Law (36 Vr.) 51; Jersey City* v. *New Jersey Street Railway Co., 73 N. J. Law (44 Vr.) 176*) by which, on

their face, the company had the consent of the state to extend the period of its own existence. How far then did the consent of the state go and to what corporate powers did it reach? The purpose, object and scope of the constitutional provision in question was considered by the supreme court in *Jersey City* v. *North Jersey Street Railway, supra.* Chief-Justice Gummere says: "The object of the constitutional provision appealed to is not to prevent corporations from being vested with exclusive powers, privileges and franchises, but to prevent the legislature from granting corporate powers, privileges and franchises to one set of applicants and refusing to another set of applicants precisely similar corporate powers, privileges and franchises." And discussing the effect and operation of the act of 1876, he says that "if it preserved to any corporation which takes advantage of its provisions a power, privilege or franchise which no other corporation of the state of a like character holds or can acquire, it would contravene the constitutional provision referred to to that extent." That is to say, the constitutional requirement was that everybody should be treated alike, and that the act of 1876 must be so construed as to effectuate the constitutional purpose, or, in other words, that it must not be construed so as to give to anyone any special power, privilege or franchise which it did not provide for giving to anyone else who might apply for it. This means that if the document which was filed by the company in 1878 for the purpose of extending the duration of the life of the company should produce the effect of vesting exclusive powers, privileges and franchises in the company which filed it, then and in such case the instrument so filed would be void so far as exclusive franchises are concerned and no exclusive rights could be acquired thereunder. What powers, privileges or franchises did the certificate of 1878 confer upon the company that filed it which were peculiar to it and which could not have been acquired by anybody else? There was in force at that time a general law which authorized the formation and regulation of gas light corporations. *P. L. 1876 p. 309.* It became a law on the same day with the act authorizing corporations to extend the period of their existence. So far as I can see, the certificate of 1878 and the legislation which authorized it did not give to the New Brunswick company

any power, privilege or franchise either in New Brunswick or in the outlying counties of Somerset and Middlesex which was not procurable by others at that time under the general act to which I have referred. It was only necessary to organize a corporation with sufficient capital to build the works and lay the mains, and immediately the new company would become vested with power to supply gas to the borough of South River in as full and ample a manner as the right is now claimed to exist in favor of the New Brunswick company.

I think it must be conceded that if the certificate of 1878 and the legislation upon which it was based should be found to perpetuate any special power, privilege or franchise, which would be exclusive in its operation, the result would be, not that the legislation and the certificate thereunder would be absolutely void, but that the special and peculiar franchises in so far as they were exclusive would be invalid and unenforceable. The act of 1876 was held to be general. It is general in form, but the law will not give countenance to any act done in accordance with the forms which it prescribed that will work out a result in contravention to the fundamental law.

I therefore conclude that the right claimed by the New Brunswick company and its lessee to lay gas mains within the limits of the borough of South River is an existing right, held under legislative sanction, and that it is enforceable by the ordinary lawful methods.

I have also, in this connection, made a cursory examination into the powers of the borough government in connection with this litigation, although no point was made of it at the hearing or any argument adduced in relation to it. By the Borough act of 1897 (*P. L. 1897 p. 285*) the council of the borough has power to pass ordinances, among other things, to prescribe the manner in which corporations shall exercise any privilege granted in the use of any street, road or highway, or in digging up the same for any purpose whatever. The council has passed an ordinance in relation to this subject, a copy of which is appended to the bill, and the first section of which is herein above referred to. This power, however, is a mere regulative one, and does not extend so far as to permit an arbitrary refusal or an unreasonable regulation or

requirement, much less does it authorize a flat prohibition. Vice-Chancellor Stevens says of it in *Madison* v. *Morristown Gas Light Co., supra,* that the act authorizes the borough council to prescribe the manner in which corporations or individuals may exercise any privilege granted to them in the use of any street, and that it plainly authorized regulation, not prohibition, and that, consequently, an ordinance authorizing the street committee arbitrarily to refuse a permit was invalid. The supreme court made the same ruling with relation to township ordinances in *Cook* v. *North Bergen, 72 N. J. Law (43 Vr.) 119; affirmed, 73 N. J. Law (44 Vr.) 818.* The complainants in this case made application to the borough authorities for permission to dig into and open the streets for the purpose of laying their mains. The application appears to comply in every particular with the terms of the ordinance. The mayor, in whose discretion the permission lies, has refused to grant it. No reason is assigned for his refusal. It does not appear from the motion papers that he ever considered it. His refusal, therefore, amounted to a prohibition, and as such is manifestly void. Having complied with the terms of the ordinance, it became the duty of the mayor to grant the permit, and his action in refusing it may be disregarded.

The result is that an injunction must issue in accordance with the prayer of the bill, but it must be upon terms.

In case the defendant shall succeed upon final hearing, it will have the right to demand that all the work done by the complainants *pendente lite* must be removed, upon the principles laid down by Vice-Chancellor Emery in *Morrow* v. *Hasselman, 69 N. J. Eq. (3 Robb.) 612.* The defendants ought not to be put to the expense of a new and independent litigation to effect their removal. I shall therefore require that the complainants file a stipulation consenting that the court may, in this cause, by a mandatory injunction, or otherwise, as shall be most convenient, direct the removal of the mains which may be laid pending the suit, in case it shall be decided that they were wrongfully laid.