# CHARLESTON

CITY OF WHEELING v. THE NATURAL GAS COMPANY OF WEST VIRGINIA.

Submitted February 24, 1914.    Decided May 12, 1914.

1. GAS—*Injunction—Parties—Action Against Gas Company.*
    Consumers of natural gas are not necessary parties to a bill by a municipal corporation against the gas company to enjoin alleged violation of its franchise contract, and for an accounting of gas sold. (p. 375).

2. INJUNCTION—*Right of Action—Existence of Other Remedies.*
    In such case of alleged violation of a franchise ordinance the remedies at law, by mandamus or by enforcement of criminal ordinances against consumers of gas for violations thereof, are not as complete and adequate as the remedy by injunction and for specific execution, so as to justify denial of relief in equity. (p. 375).

3. MUNICIPAL CORPORATIONS—*Power to Grant Franchise.*
    Where a municipal charter gives power and authority to open and lay out, graduate, pave, and otherwise improve streets, and "generally to ordain and enforce such regulations respecting the same as shall be proper for the health, interest or convenience of the inhabitants of said city," power is thereby also implied to grant the use thereof to gas companies and other public service corporations, but not the exclusive use, and also the discretionary power to refuse such privileges, and also to limit the same to a particular purpose not violative of some statute, rule of law, or rule of public policy. (p. 378).

74 W. Va.

4. SAME—*Powers—Grant of Franchises—Right to Limit.*

Possessed of such discretionary charter powers a municipality in granting a franchise may limit the use of its streets, alleys and public grounds to a particular purpose, without violating any rule of law or rule of public policy.    (p. 378).

5. MONOPOLIES—*Municipal Franchise—Validity.*

A franchise ordinance given a natural gas company by a municipal corporation to use its streets, alleys and public grounds for supplying natural gas for heating purposes, and conditioning the same that gas shall not be sold through the pipes of such company for lighting purposes in competition with gas manufactured by it, does not operate to create a monopoly in favor of such municipality in the manufacture and sale of manufactured gas, inhibited by any rule of law or rule of public policy.    (p. 379).

6. SAME.

The rule appears to be different in those states where public service corporations derive power and right to serve the public in a particular way, not from the municipality, but from the constitutional or statutory law, and requiring only the consent of the municipality to occupy its streets, alleys and public grounds for such purposes.    (p. 379).

7. GAS—*Municipal Corporations—Franchises—Validity.*

While a rule of frequent application is that when a public service corporation accepts a franchise it accepts the same with the burdens imposed and is estopped to deny the validity of its conditions, yet where, as in this state, a limit to the power of a municipality to attach conditions is recognized, the attempt to impose unlawful or invalid conditions is regarded as a mere nullity, and if divisible, the rule is to disregard the unlawful or invalid part, leaving the remaining part unaffected thereby.    (p. 381).

8. FRANCHISES—*Obligations—Estoppel.*

But if a public service corporation has accepted the provisions of such franchise ordinance and by doing so enjoyed benefits which would not otherwise have been granted, and has thereby assumed obligations of money or service, which it ought not to escape, such liability will be enforced, and it will be estopped to deny the validity thereof.    (p. 381).

9. GAS—*Grounds—Conditions in Franchise—Violation.*

Though a municipal corporation at the time it grants a franchise to a natural gas company to serve the public with natural gas for heating purposes owns and operates a plant for manufacturing gas for lighting purposes, and thereby lawfully conditions its grant to the natural gas company that gas shall not be sold through the latter's pipes for lighting purposes so as to compete with gas manufactured by it, nevertheless, if it afterwards grants to electric

lighting companies franchises, and permits them to sell electricity for lighting purposes in competition with its gas, and knowingly and actually permits citizens not reached by its pipes to use natural gas for lighting purposes, and has suffered its gas plant to become dilapidated, and no longer manufactures gas reasonably fit for lighting purposes, and because of which others within reach of its pipes discard and refuse to use such gas, and without the consent and against the protest and notice of the natural gas company they make use of natural gas for lighting purposes, a court of equity will not, upon principles enunciated in the opinion, enjoin such natural gas company from permitting such use of its gas and require it to account in damages to said municipality as for a breach of its franchise and for the gas so used for lighting purposes. (p. 382).

(POFFENBARGER and ROBINSON, JUDGES, dissenting.)

Appeal from Circuit Court, Ohio County.

Suit by the City of Wheeling against the Natural Gas Company of West Virginia. From decree for plaintiff, defendant appeals.

*Reversed and entered here.*

*Caldwell & Caldwell* and *J. B. Handlan,* for appellant.

*J. Harold Brennan* and *T. S. Riley,* for appellee.

MILLER, PRESIDENT:

The bill prays for an injunction restraining defendant from selling or permitting to be sold for lighting purposes natural gas conducted through its pipe lines, so as to compete with gas manufactured by plaintiff, in alleged violation of its ordinance franchise of April 17, 1885; also for an accounting for all illuminating gas sold in competition with plaintiff's manufactured gas, and for general relief.

Section 1 of said ordinance provides: "Sec. 1. Permission is hereby granted the 'Natural Gas Company of West Virginia', to lay pipes in and under the streets, alleys and public grounds of the city of Wheeling for the purpose of conducting natural gas for heating purposes." The condition of section 2 thereof, alleged to have been violated and on which the relief prayed for is predicated, is as follows: "Sec. 2. The grant in the foregoing section is upon condition that the gas conducted through such pipes shall not be sold by said company for lighting purposes so as to compete with the gas man-

ufactured by said city." The amending ordinances of March 24, 1896, and March 26, 1907, relate mainly to the rates per thousand cubic feet to be charged for gas, but limit the right of defendant to the sale of gas for heating purposes. All ordinances were duly accepted by defendant by resolutions of its board of directors.

Defendant both demurred to and answered the bill. The answer denies any violations of these ordinances, and puts in issue the material allegations of the bill. Many exceptions to the answer were sustained and the action of the court thereon is relied on as error. By its demurrer defendant challenges the sufficiency of the bill, because of the absence as parties of the consumers of gas, want of equity, and because of alleged invalidity of the conditions of the ordinance pleaded; and the same matters are pleaded and relied on in its answer.

We do not think the bill bad for want of parties. If the ordinances are valid exercises of legislative, administrative, or police powers conferred on plaintiff, and are valid and enforceable contracts between plaintiff and defendant, consumers of gas have no such interests, not represented by plaintiff, as entitle them to be heard in defense of the suit. While they might not be bound by the decree, so as to affect their right to demand gas from defendant for lighting purposes, if any, they have not such right to be heard on the issues involved here as to make them necessary parties to the suit. *Nairin* v. *Kentucky Heating* Co., (Ky.) 86 S. W. 676.

Nor on the principles of the bill do we think there would be adequate remedy at law. It is claimed that one remedy would be by enforcing criminal ordinances against the use of natural gas for lighting purposes, and the remedy by mandamus. If the ordinances are valid and enforceable, we do not think these remedies would be adequate. Besides equity is a more adequate and complete remedy and jurisdiction is well founded on right to specific execution of valid ordinance contracts. *City of Moundsville* v. *Ohio River R. R. Co.*, 37 W. Va. 92. All other grounds of defense relied on in the demurrer are also covered in the answer, and need not be separately considered. Summarized by the learned judge below, they are as follows:

"1. The City of Wheeling was without power to pass such

an ordinance as that under which it seeks to limit defendant's sale of gas.

"2.    The condition limiting the right of the defendant to sell gas creates a monopoly in the sale of gas for lighting purposes, and for that reason it is void.

"3.    Said condition is in restraint of trade and contrary to public policy.

"4. . Said condition „gives rise to discrimination between classes of consumers, is therefore unreasonable and void."

And we will add another not fully comprehended perhaps by those stated, and founded on the broad principles of justice and equity.

5.    That the enforcement of the conditions imposed by said ordinances in this case would be arbitrary and unreasonable, and would impose burdens upon and deprive the people of benefits to which they are justly entitled, resulting in partiality and prejudice unwarranted by law.

The allegations of the answer bearing on these propositions, and particularly the last one, briefly stated are: That defendant has never sold gas for lighting purposes without consent of council, that all gas is served through meters, upon applications in writing, limiting consumers to the use of gas for heating purposes only; that when gas passes the meter it becomes the property of the consumer, and defendant has no control of the use made of the gas, except by arbitrarily shutting it off at the street, in violation of its duty as a public service corporation to serve the consumer with gas for heating purposes; that one Henry, a consumer of natural gas, on a charge of using it for lighting purposes, in violation of a city ordinance against such use, was found guilty in plaintiff's police court, but on appeal to the criminal court of Ohio County was acquitted, such ordinance imposing a fine of not less than one nor more than one hundred dollars, with costs and imprisonment.

That as showing the good faith of defendant, it had as late as June, 1908, denied the request of a member of plaintiff's city council to use natural gas for lighting purposes; that without defendant's consent the president of the board of gas trustees, managing the plaintiff's gas plant, and one of the persons responsible for the institution of this suit, is using

natural gas supplied by defendant in lighting buildings owned by him; that the depletion in plaintiff's revenues from the manufacture and sale of manufactured gas has been due not so much to the misuse by patrons of natural gas furnished through defendant's pipe lines, but to the miserable management of plaintiff's gas plant, the bad quality of its product, and also to the competition of electric lighting companies admitted to the streets, alleys and public grounds to serve electricity in competition with plaintiff's manufactured gas, such electric light furnished being cheaper and better and more desirable in every way than the manufactured gas supplied by plaintiff, said answer instancing the many houses which had discarded manufactured gas for electricity for the reason aforesaid; that plaintiff's gas plant has become dilapidated, leaky and incapable of manufacturing gas fit for consumption, and that though representing an investment of many thousand dollars, and covered by a bonded indebtedness, such fact furnishes no valid excuse or ground for the enforcement of the conditions imposed upon defendant in said franchise ordinances nor for arbitrarily and unjustly attempting through defendant to enforce the same against consumers of natural gas; that natural gas supplied through defendant's pipes furnishes a much better light than the impure and dangerous product furnished by the plaintiff, and at a price from four to five times less per thousand cubic feet than the inferior product of plaintiff; that in its attempt to enforce the use of gas supplied by plaintiff it has from time to time in the past purchased natural gas from defendant, and supplied the same to its patrons, charging them the price of manufactured gas, when they could have been supplied with an illuminant much cheaper and of a better quality through defendant's pipes; that thousands of residents in said city are not reached by the service pipes of the plaintiff, but are reached by defendant's lines, and who by consent of the plaintiff have been using natural gas supplied by defendant for lighting purposes, and at prices one third less than the cost of manufactured gas paid by the less fortunate inhabitants of said city, who live within the reach of plaintiff's service pipes, all of which it is alleged amounts to class legislation, undue discrimination, and is arbitrary and unjust and not promotive of any purpose

for which power was delegated to plaintiff, or inherently possessed by it; that defendant has at no time desired to enter into competition with the plaintiff in the sale of gas for lighting purposes, and that to the best of its ability it has refrained from making such sales, that the value of gas consumed by patrons for lighting purposes through its lines would not exceed fifteen hundred to two thousand dollars per annum, and that the rate charged by plaintiff for manufactured gas would not in any one year exceed the sum of five thousand dollars, sums so small as not to justify plaintiff in the arbitrary and unjust imposition of its bad and inferior product upon its citizens. And lastly it is alleged that plaintiff in the exercise of its governmental power over its streets, alleys, and public grounds, and to grant the use thereof to defendant and other corporations, has no power to impose conditions on such grants as would create a monopoly in its favor of a purely private enterprise, such as the manufacture and sale of gas, and that the attempted exercise of such power in this instance so as to deprive its citizens of the beneficial use of natural gas for illuminating purposes, is unjust, oppressive, illegal and unconstitutional.

On the first proposition. At that time the city, by the act of its incorporation, had power and authority to open, lay out, and graduate streets, to pave or otherwise improve the same, and ''generally to ordain and enforce such regulations respecting the same as shall be proper for the health, interest or convenience of the inhabitants of said city.'' It is to this power that we are referred for the enactment of the franchise ordinances in question. Charter powers thus limited have generally here and elsewhere been construed as giving municipalities authority to grant the use of its streets, alleys and public grounds to gas companies, electric companies, telephone and telegraph companies, and other public service corporations, but as not including the power to give the exclusive use thereof for such purposes to any one company, and that this power also implies the discretionary power to refuse such privilege. *Gas Co. v. Parkersburg,* 30 W. Va. 440; *Richards* v. *Clarksburg, Id.* 491; *Arbenz* v. *Wheeling & H. R. Co.,* 33 W. Va. 1; *Clarksburg Electric Light Company* v. *Clarksburg,* 47 W. Va. 739. And as we see, section 1 of the ordinance in

question here limited the grant to "natural gas for heating purposes." And where the power of making or refusing the grant exists, it has uniformly been held, so far as we can find, that there is power to limit the grant to a particular use. *Allegheny City* v. *Railway Co.*, 159 Pa. St. 411; *Plymouth Township* v. *Railway Company*, 168 Pa. St. 181; *Gas Light Co.* v. *Gas Co.*, 161 Pa. St. 510; *Circleville Light & Power Co.* v. *Buckeye Light & Gas Co.*, 69 O. S. 259. But of course such limitation must not be violative of any rule of law or public policy, and we think we may add, be unjustly arbitrary, discriminative, or oppressive, or be such as to work injustice and impose burdens upon the people, or deprive them of rights to which they would otherwise be entitled. Of this latter proposition more will be said hereafter. We think it quite clear as a general proposition, that a municipal corporation has power to limit the use of its streets, alleys and public grounds for particular purposes. The authorities cited say unless restrained by some law forbidding it such municipality may limit a franchise to one person or corporation for furnishing gas for lighting, to another to furnishing gas for heating purposes, to another to furnishing electric light, to another to carrying passengers, and so forth, without violating any rule of law, public policy, or private right. In its abstract, therefore, we must deny the first proposition.

The second proposition is that the condition imposed in defendant's franchise ordinance is void. The proper solution of this question, as was said in the opinion of the court below, depends upon the answers to be given to the propositions remaining to be considered.

The first of these is, does this condition or limitation create or give rise to a monopoly inhibited by law? Before this ordinance was granted, plaintiff, by succession to the rights of the Wheeling Gas Company, incorporated by act of 1850, and by the power inherent of refusing the grant, except upon condition, and to refuse said grant upon any condition, was in the enjoyment of an absolute monopoly in the manufacture and sale of illuminating gas. The right to this privilege was one which could not be taken away except by legislative act or by its own voluntary action. Conceding that the exclusive priv-

ilege given by the act to the Wheeling Gas Company for thirty years expired at the end of that term, this fact did not deprive plaintiff of the right to maintain its monopoly by denying the use of its streets, alleys and public grounds to others to come into competition with it for the sale of gas, or to impose such conditions in granting franchises as were not inhibited to it or violative of some rule of law or public policy. The rule may be and perhaps is different in those jurisdictions where public service corporations, such as gas companies, do not derive the right to exercise their privileges directly from the municipalities, but from constitutional or statutory grants. *In re William Henry Johnston,* 137 Cal. 115; *Gas Light Co. of New Brunswick* v. *Borough of South River,* (N. J.) 77 Atl. 473, and cases cited, are sufficiently illustrative of this proposition. While our cases hold, with the decisions of many other states, that exclusive grants may not be given to persons or corporations for public utilities, nevertheless where a municipal corporation has the right of arbitrarily refusing grants to more than one person or corporation such grant may operate to create a monopoly, but not one inhibited by law. The rule is different, of course, in those jurisdictions where such discretion has been taken away or not conferred upon municipal authorities. Though municipalities derive their powers from constitutional or legislative grants, they may by the exercise of their discretionary powers refuse rights to others and thereby maintain monopolies in themselves, but the monopolies thus enjoyed are not unlawful or within the ancient definition of a monopoly, inhibited by law. When a municipality is given authority, as here, to supply its inhabitants with gas, water, light or electricity, or any other commodity, it must be assumed that it was the legislative intent that it might occupy the field to the exclusion of all others, without violating any rule of law or public policy. In such cases the right thus reserved is different from exclusive right granted a private corporation, for in the former case the right is exercised by and for the people, not for profit, but for the public welfare. This proposition is vigorously controverted by counsel for appellant, but we think it well founded in reason, and its proper application is further illustrated in State Dispensary

laws which have been upheld. *Plumb* v. *Christie,* (Ga.) 42 L. R. A. 181.

Another rule of frequent application is that when public service corporations accept franchises, if the conditions be lawful, they accept them with all the burdens imposed, and are estopped to deny the conditions or their validity. Dillon on Municipal Corporations, (5th Ed.) section 1229, states this rule thus: ''And in those jurisdictions in which a limit to the power of the municipality to attach conditions is recognized, the attempt to impose *an unlawful or invalid condition* is regarded as a mere nullity, and the validity of the consent or franchise is not affected thereby. But in other jurisdictions the principle of *estoppel* appears to be applied, and it is held that a railroad company or other public service corporation, which has accepted the benefit of a grant or consent with a condition attached thereto, is estopped to contest the validity of the condition either as *ultra vires* the municipality, or as beyond its own powers, and is bound thereby.'' And in jurisdictions of the first class the rule is, if it is divisible, to disregard the unlawful or invalid part of the condition, leaving the remaining part unaffected thereby. *Illinois Trust & Savings Bank* v. *City of Arkansas City,* 76 Fed. 271, elaborate opinion of Judge Sanborn. The cases cited by Mr. Dillon in note 2, of the section quoted from, also illustrate the application of this rule. And an examination of the authorities cited by him will show that the rule of estoppel in jurisdictions of the second class is applied only where the corporation or person accepting the franchise has enjoyed its benefits, and has thereby assumed some obligation of money or service which it ought not to escape. *Rutherford* v. *Hudson River Traction Co.,* 73 N. J. L. 227; *Potter* v. *Calumet Electric St. Ry. Co.,* 158 Fed. 521; *Postal Tel. Cable Co.* v. *City of Newport,* (Ky.) 76 S. W. 159; *Selectmen of Clinton* v. *Worcester, &c. St. Ry. Co.,* 199 Mass. 279; *Western Paving and Supply Co.* v. *Citizens' St. R. R. Co.,* 128 Ind. 525; *Chicago Gen. Ry. Co.* v. *City of Chicago,* 176 Ill. 253; *People* v. *Suburban R. R. Co.,* 178 Ill. 594; and our case of *St. Mary's* v. *Hope Natural Gas Co.,* 71 W. Va. 76. We find no rule of law or authority for the proposition that conditions imposing hardships upon or unjust discriminations between citizens and patrons of a pub-

lic utility, or depriving them of rights enjoyed by others, may be arbitrarily enforced to the detriment of the public served, or estopping such company from denying the invalidity thereof, or the right of the municipality to enforce the same under conditions working such detriment and injury.

The next question is, is. such condition contrary to public policy and void for that reason? Abstractly speaking, we would have to answer no, for as was pertinently said by the opinion of Judge Hervey in the court below, all exclusive grants or franchises are not invalid. If there is legislative authority therefor they will be upheld. Here the plaintiff had authority legislatively given to grant or withhold the franchise to defendant, and in its corporate capacity to manufacture and sell gas to its citizens, and as we have said, by withholding the right from others, to maintain a monopoly therein within itself, without violating any rule of law or public policy. The decisions already cited for other propositions will fully support this one.

Lastly, and comprehending the fourth and fifth grounds of defense, does or will the enforcement of the condition of defendant's franchise work a discrimination between the' different classes of consumers of gas, those reached and those not reached by the plaintiff's gas mains, and between users of gas and users of electricity supplied by electric light companies, justifying a court of equity in withholding its injunctive process, and denying plaintiff right of recovery as for a technical breach of the condition so sought to be enforced? This is the feature of this case distinguishing it from others. Though defendant has denied any breach of the condition, the admissions in its answer and the proof taken show conclusively that gas had been consumed by persons served by it with natural gas for lighting purposes, and that it had received pay therefor, and this, as the court below held, may have constituted a technical breach. But should a court of equity, under the circumstances alleged and shown in the evidence, enforce this condition against defendant and mulct it in damages, when it has not connived at or intentionally violated the condition, and when rights equally as detrimental to its interests as a manufacturer of gas have been given to electric light companies and others supplying light? And would it be equitable

and just to thereby deny to some privileges enjoyed by others when plaintiff has failed to serve its citizens with a merchantable quality of manufactured gas, forcing some involuntarily to use defendant's gas, or to go without either? We do not think so. True the bill represents plaintiff's desire to maintain and protect its gas plant, but it has wholly disregarded this object, as the evidence shows, in allowing electric light companies to come into competition with it in the sale of its illuminant. It seems to us this evinces lack of good faith on the part of the plaintiff, and deprives its citizens arbitrarily and unjustly and with great discrimination from procuring a better light at much less expense than is produced by electricity or the manufactured gas produced by plaintiff. The nearest approach to this case is *Nairin* v. *Kentucky Heating Co., supra,* but it does not come up to this case. That was a suit to enjoin a heating company from cutting off a supply of natural gas to plaintiff's property, upon the ground that it was being used for lighting purposes. The defense of the heating company was that it had been previously enjoined from supplying gas for lighting purposes, and had then been adjudged in contempt of the lower court for allowing consumers to use natural gas for that purpose. The injunction was denied mainly on the ground of failure to allege a contract for the supply of gas for any purpose. But this was by a divided court in an opinion marked "Not to be officially reported." A full history of this case and of litigation pertaining to the subject may be found by reference to the decisions cited, and to *Kentucky Heating Co.* v. *Louisville Gas Company,* 59 S. W. 490; *Kentucky Heating Co.* v. *Louisville Gas Co., Id.* 1090; *Kentucky Heating Co.* v. *Louisville Gas Co.,* 63 S. W. 751; *Kentucky Heating Co.* v. *Louisville Gas Co.,* 70 S. W. 656. The contest involved in these cases was between two competing companies over the right to supply artificial and natural gas for heating and lighting purposes, but no such grounds for denial of equitable relief as are presented here were presented in those cases, and the Kentucky court was much divided on the questions involved. All these cases except the first, reported in 59 S. W. 490, and including the case in 86 S. W. *supra,* are marked "Not to be officially reported." Counter to the proposition for which these cases are cited is

*Springfield* v. *Springfield Gas Co.,* 7 Ohio Law Rep. 530, 31 Ohio Cir. Ct. Rep. 446, affirmed by the Supreme Court in 81 Ohio St. 537. In that case the defendant company, which had a franchise from the city to supply manufactured gas, purchased the rights and franchises of another company having right to supply natural or produced gas for heating, fuel and power purposes only. With the rights of both companies, defendant refused to supply natural gas for illuminating purposes, and it defended under the franchise limiting the natural gas company to supplying natural gas for heating, fuel and power purposes only. Natural gas, with the knowledge and consent of both companies, had been used and paid for by the patrons of these companies for illuminating purposes, and upon the application of the city solicitor in the name of the City of Springfield defendant was enjoined from violating its obligations to furnish natural gas for lighting purposes upon the principles enunciated in the decision, that a municipality is without authority to prescribe by ordinance that a commodity acquired by its inhabitants shall not be used for any purpose that is not dangerous or injurious, and holding the provision in the ordinance referred to void. If the broad principles of equity invoked in that case were properly applied there they may certainly and with equal or greater propriety be applied in the disposition of the case at bar. Municipal corporations are created to promote, not to hinder, the public good. In the exercise of their powers they are limited to those expressly granted, those necessarily or fairly implied, in or incident to the powers expressly granted, and those essential to the declared objects and purposes of the corporation, not simply convenient but indispensable. In granting the franchise to defendant plaintiff was exercising not a police power, but one legislative and administrative in character, and as we have already indicated, we find no want of power in the abstract to impose limitations and conditions. And while equity will generally follow the law in the enforcement of purely legal rights there are limitations to this rule. It "does not apply where the express provisions of any law are violated by the contract, nor, in general, where the interests of the public, or of third parties, would be injuriously affect-

ed by its fulfillment.'' Broom's Legal Maxims, (8th Ed.) 541; *Lowther Oil Co.* v. *Miller-Sibley Oil Co.*, 53 W. Va. 501, 511. Would not the enforcement of the condition of defendant's franchise work great injury to and hardship on many of plaintiff's citizens, be arbitrary, discriminative and unjust, and deprive them of rights they might otherwise and are really entitled to enjoy? We think it would. In this connection what was said by Judge POFFENBARGER, in *Town of Fulton* v. *Norteman,* 60 W. Va. 562, 574, is quite pertinent: ''It is further to be observed, on a view of the decisions to which reference has been made, that, in almost every case of condemnation for unreasonableness, restraint of trade, adverseness to common right, discrimination or want of authority, an apparent ground of authority and color of legality has been discoverable in the terms of the ordinance. But it is not enough that an ordinance is, in some sense or degree, promotive of the purpose for which the power to pass it was given. It must also be free from those elements which the courts have declared to be vicious in legal contemplation. In endeavoring to promote health, preserve order, encourage trade, and abate nuisances, corporate authorities must avoid discrimination, oppression, excess of authority and other things which are forbidden to them. An ordinance, to be valid, must be within the corporate power, promotive of the purpose for which the power was delegated, or is inherently possessed, and free from the vices of unreasonableness, partiality, arbitrariness and unconstitutionality. Whether it combines all these requisites is to be determined by its operation and effect, whatever the ostensible purpose or effect, disclosed by its mere letter, may be.'' Moreover, it has been many times decided that though a statute may be lawful as applied to some person it may nevertheless be rendered invalid in its application to others, if its enforcement would deprive them of legal and constitutional rights. *Railway Co.* v. *Conley and Avis,* 67 W. Va. 129.

When a municipality steps outside its purely governmental sphere, to engage in a purely business enterprise, its contracts, rights and obligations are measured by the same rules applicable to private persons. *Wigal* v. *City of Parkersburg,* 74 W. Va. 25, 81 S. E. 554, decided at this term. If the

old Wheeling Gas Company, to whose rights plaintiff succeeded, under the act of 1850, was here complaining in the place of plaintiff, and it had neglected its duty to serve the public with a good quality of gas, as plaintiff has done, and under the circumstances and conditions disclosed here, would any court of equity entertain it, and enforce against defendant the condition of its franchise, and thereby force upon the citizens served the use of gas unfit for consumption, and deprive them of rights enjoyed by others in the use of a better and cheaper gas? We do not think so. We think that would be an abuse of equitable process. If so upon what principle has plaintiff any better right? We think it has none. We are not called upon to decide and do not decide, what a court of equity should do under other and different circumstances and conditions, but under those disclosed by this record, we have no hesitation in holding upon broad equitable principles that plaintiff is not entitled to the relief prayed for.

We, therefore, reverse the decree, and will enter such decree as we think the circuit court should have entered dismissing plaintiff's bill with costs to defendant here and in the circuit court herein expended.

*Reversed and entered here.*

POFFENBARGER, JUDGE, *(dissenting):*

I am unable to concur in the opinion and decision in this cause.

The city has power to protect its own property, even though, in so doing, it may be necessary to deny to citizens privileges they desire. Citizens have no legal right to require the city to grant a franchise to a public service corporation, or to enforce the granting of such a franchise as they think they should have, otherwise than by the election to the city offices, of men favorable to the grant of the particular franchise. Having had the legal power to refuse the gas company any franchise at all, it necessarily had the narrower and lesser power to grant it a limited one. All this the majority opinion admits.

Assuming the action of the city council, in the granting of the franchise, to have been legislative, the court declares

the limitation upon the franchise void, because it works discrimination between citizens and sections of the city. I think this a fallacious position. The action of the council was not legislative in any substantial or true sense of the term. Such a franchise is a mere contract between the city in its corporate capacity and the corporation rendering the service. *Bluefield Water Works etc. Co.* v. *City of Bluefield,* 69 W. Va., 1; *Railroad Co.* v. *Triadelphia,* 58 W. Va., 487; *Clarksburg E. L. Co.* v. *Clarksburg,* 47 W. Va., 739. Hence the principle declared and applied in *Fulton* v. *Norteman,* 60 W. Va., 562, is not applicable. The action of the council was merely administrative, like the building of a bridge, a road or school house, over which the power of the corporation is plenary and irreviewable. *County Court* v. *Boreman,* 34 W. Va., 87. Manifestly the gas company has no legal right to demand anything of the city other than the observance of the contract as made, and, as made, it expressly excludes the right claimed by the gas company. By all authorities, the citizen has nothing more than a sort of moral right respecting the policy of the city. So the gas company having no legal right of its own, can derive none from the citizen, for he has none. The addition of nought to nought does not make anything. That the gas company itself has no right to violate the condition of its contract with the city is virtually admitted, but it endeavors to justify itself, in so doing, under some sort of right in the citizen. The latter's lack of power to control the city otherwise than by the exercise of the right of suffrage has been shown, but, if he had any, it is not perceived how the gas company becomes his representative.

The gas company derives its general powers, not from the city, but from general laws, and they are subject to this important limitation: they cannot be exercised in any incorporated city or town without its permission. This right of the city or town to grant or refuse such permission includes the right to grant it upon conditions, and it may limit such public service corporation to the exercise, within the limits of the city or town, of only part of its general powers. No reason is perceived why the city may not parcel out its territory among a number of public utility concerns or parcel

out the business among them on the basis of departments as the city of Wheeling has divided it. The Kentucky cases cited in the majority opinion so hold. That some of them were ordered not to be officially reported does not deny them the dignity of precedents. The first one, declaring the principle adhered to by the later ones, was ordered to be reported and the decision appears to have been unanimous.

Foundation for this decision is sought in the principles of equity jurisprudence, but no basis for it there is perceived. What may be deemed moral rights in citizens against municipal corporations are not equities and have never been recognized as such. This is well and clearly demonstrated in the Parkersburg bridge cases, *County Court* v. *Boreman,* 34 W. Va., 87 and *County Court* v. *Armstrong,* 34 W. Va., 326, and in *City of Charleston* v. *Littlepage,* 73 W. Va. 136, —— S. E. —— and *Spedden* v. *Board of Education,* decided at this term. The question is one of municipal policy and power, in which mere moral rights of citizens are not recognized nor cognizable, except by the corporation itself.

The opinion also contains a suggestion of disability on the part of the city to sue in equity by reason of its misconduct in the operation of its own gas plant, but the clean hand doctrine has no application. Gas illumination is a department of public service allotted or reserved, by competent legal authority, to the city itself, and, therefore, does not belong to the gas company. Hence any declaration of duty on its part, respecting that department, was not inequitable or wrong conduct toward or against the gas company. Courts of equity do not refuse people relief on account of their generally bad character or their wrongful acts having no immediate and direct connection with the subject matter of the relief sought, under the clean hand rule or principle. *Peters* v. *Case,* 62 W. Va., 33. To bar relief the inequitable conduct must have occurred in and about the identical subject matter of the bill and have been to the injury of the defendant. Obviously the doctrine has no application here.

The Ohio case of *Springfield* v. *Springfield Gas Co.,* cited and relied upon in the majority opinion, is not applicable. There the city sued to compel the gas company, holding two franchises, one for natural gas for fuel and power purposes

and the other for artificial gas for illuminating purposes, to furnish natural gas for lighting purposes. By the institution of its suit as well as its previous demand, it assented to the furnishing of such gas for such purpose. Here the city has not given such consent. In so far as it releases the city from its contract with the gas company, the decision is utterly inconsistent with the Kentucky cases referred to as well as with sound legal principles.

Judge ROBINSON joins in this dissent.