## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### VIRGINIA RAILWAY AND POWER COMPANY *v.* CITY OF NORFOLK.

May 27, 1926.

1. MUNICIPAL CORPORATIONS—*Street Railways—Franchise Ordinance—Construed in Favor of the Public.*—In determining the meaning of a street railway franchise a provision in regard to cost of repaving the street and keeping it in good repair is to be construed most favorably for the interests of the public, and against the company enjoying the franchise; and doubts must be resolved in favor of the municipality.

2. MUNICIPAL CORPORATIONS—*Street Railways—Franchise Ordinance—Repaving—Cost of Concrete Base—Case at Bar.*—A franchise ordinance provided that in case the streets occupied by the street railway should in the future be paved or repaved the city should furnish and deliver the material therefor upon said streets and have the work done, but the proprietors or lessees of the railway should pay the city for the cost of labor for laying the same between the tracks and two feet on each side thereof, and that the owners, proprietors or lessees of the railway should keep the streets covered by said tracks and extending two feet on the outer limits of each side of said tracks in thorough repair at their own expense.

  *Held:* That the street railway company should pay for the material used in the area, in addition to that required for the ordinary surface paving, when the additional material was required in laying a heavy concrete base to protect the paving from vibration and injury resulting from the presence of the tracks and the operation of the cars.

Error to a judgment of the Circuit Court of the City of Norfolk, in an action of assumpsit.    Judgment for plaintiff.    Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Venable, Miller, Pilcher & Parsons, R. E. Miller,* and *T. Justin Moore,* for the plaintiff in error.

*R. W. Peatross* and *John B. Jenkins, Jr.*, for the defendant in error.

CRUMP, P., delivered the opinion of the court.

This case is an action of assumpsit brought by the city of Norfolk against the Virginia Railway and Power Company, in which a jury was waived, and all matters having been submitted to the court, judgment was rendered against the defendant company for $2,400.04. The defendant in the case operated, or controlled the operation of, a line of street cars in the city of Norfolk.

The claim asserted in the action was for the payment of money expended by the city in connection with the smooth paving on Granville avenue, upon which tracks of the street car line had been laid, and upon which the company was operating its cars at the time. The city rendered a bill to the company consisting of four items, (1) for material used in ordinary paving, (2) labor used in ordinary paving, (3) material used in extra concrete, (4) labor used in extra concrete. The labor and material mentioned related to that portion of the street covering the space occupied by the tracks and a distance of two feet beyond the outer rail on each side, commonly known as the track area or zone. The ordinary paving covering the street generally, exclusive of this track area, as laid by the city, was about three inches in thickness. In the track area between the rails it was found necessary to lay a concrete basis several inches below the ordinary paving, in order to provide for the size and weight of the rails and rolling stock in use on electric lines, and to prevent damage to the surface of the pavement by undue vibration arising from inadequate foundation.

It was contended by the city that under the franchise

obligations of the defendant company it became liable to reimburse the city for the entire expense of the paving in the track area, embracing all expenditures for material and labor.

The trial court held that under the franchise of the company and the ordinances of the city, the company was obligated generally to pay only for the labor expense incurred in the track area in the course of paving the street, and not for the cost of material.   It further held that the company was liable for both the materials and labor costs incurred by the city in laying the concrete base for the ties and tracks in the track area under the ordinary paving of the street.   Accordingly judgment was rendered for an amount excluding the material used in ordinary paving, but including the other three items above mentioned.

The city sought a writ of error to the judgment of the trial court denying the right of the city to recover the cost of the material used in laying, in the track area, so much of the material as was necessary for the ordinary paving.   The petition for the writ on that ground was denied by the Supreme Court of Appeals of Virginia, affirming therefore the ruling of the lower court in that respect.

The defendant then applied for and obtained a writ of error upon the ground that, although it was liable to pay all the labor cost, yet there was no obligation upon it to reimburse the city for the extra material used in the concrete base, that item amounting to $1,-332.59, included in the judgment.

The question therefore before the court now is to determine whether under a franchise limiting the liability for paving to be required of a street car company to the payment of labor cost only, incurred in the track area, the company should pay for the material

used in the area, in addition to that required for the ordinary surface paving, when the additional material is required in laying a heavy concrete base to protect the paving from vibration and injury resulting from the presence of the tracks and the operation of the cars.

In May, 1887, the General Assembly of Virginia enacted a law granting a charter to a corporation under the name of the Suburban and City Railway and Improvement Company, with power to construct and operate a street railway in the city of Norfolk upon such terms and conditions as might be prescribed by the city.   In January, 1888, an ordinance was passed by the council of the city containing a franchise to the said Railway and Improvement Company for the operation of its street railway in the city, with the designation of the streets upon which it might be operated and other provisions incident to a municipal franchise of that character.   Granville avenue is not named among the streets upon which the privilege was granted to run the railway.   The 9th clause of this franchise ordinance is as follows:

"The said railway shall be so made and laid down as to conform to the established or proposed grades of the several streets to be occupied by it, as given them by the city engineer, and in case the several streets occupied by it shall in the future be paved or repaved, the city of Norfolk shall furnish and deliver the material therefor upon said streets and have the work done, but the proprietors or lessees of said railway shall pay the said city for the cost of labor for laying the same between the tracks and two feet on each side thereof, such amount in case of non-payment by the company for a period of thirty days after the work is done to be recoverable by legal proceedings in the name of the city, and in case the grade of the said streets, or any of them,

or of any part thereof, shall be changed hereafter, the proprietors or lessees of the said railway, at their own expense, shall make corresponding alterations of the said tracks; and the owners, proprietors or lessees of the said railway shall keep the streets covered by said tracks, and extending two feet on the outer limits of each side of said tracks, in thorough repair at their expense."

Under the authority granted by an act of the legislature, approved in December, 1893, the Suburban and City Railway and Improvement Company and the Norfolk City Railroad Company, also operating at that time a street car line in Norfolk, were merged and consolidated into a single corporation under the corporate name of the Norfolk Street Railroad Company. The act provided:

"And the said Norfolk Street Railroad Company, so to be consolidated, shall be subject to all the liabilities of each of said consolidating companies, and shall have and possess all of the rights, powers, franchises and privileges conferred upon each of said consolidating companies by their respective charters and the several acts of Assembly concerning said companies, respective."

Later the Norfolk Street Railroad Company became, by another merger, the Norfolk Railway and Light Company, which now owns the street railway properties, although the lines are leased to and operated by the defendant corporation in the instant case.

By an ordinance of the council of Norfolk, adopted in June, 1900, the privilege of extending the railway tracks to and on Granville avenue (among other streets) was granted to the Norfolk Railway and Light Company; this privilege being granted subject to the restrictions and conditions in prior ordinances relating to the franchises of the company or its predecessors.

The railway was accordingly constructed in Granville avenue, and the city of Norfolk subsequently found it necessary to pave that street. In the course of that work, it was found essential to lay a five inch concrete base under the tracks of the railroad, in addition to the ordinary pavement of about three inches in thickness, in order to preserve the surface pavement from injury arising from the operation of its electric cars upon the rails.

Is the railway company liable, under the terms of section 9 of the ordinance above transcribed, to pay for the cost of material, as well as the labor, expended in laying this concrete foundation for its rails and ties?

This question, in our opinion, must be answered in the affirmative.

The pertinent requirements made of the railway company are (1) that in the event a street is to be *paved* or *repaved* the city should furnish the material and have the work done, and the company should pay the city for the cost of labor for laying the pavement between the tracks and two feet on each side thereof, (2) that the company should keep that part of the street covered by the tracks and two feet on each side in *thorough repair* at its own expense.

[1, 2] In determining the meaning of provisions of this character, it is well settled that they should be construed most favorably for the interests of the public, and against the company enjoying the franchise; and doubts must be resolved in favor of the municipality. *Durham Public Service* v. *City of Durham*, 261 U. S. 149, 43 S. Ct. 290, 67 L. Ed. 580.

In *City of Danville* v. *Danville Railway and Electric Co.*, 114 Va. 382, 76 S. E. 913, 43 L. R. A. (N. S.) 463, the franchise required the company to keep that portion of the street within the track area "in good order and

repair." It was there held that the duty so imposed was a continuing one and the franchise was accepted on that condition, and when the city decided to have its streets paved with a particular kind of material, the railway company should be required to use the same material. And the court there says (page 388):

"It must be remembered that such charter is to be strictly construed against the railway company, and that it has no doubtful rights under the charter, for where there are doubts they are construed against the grantee and in favor of the city."

In the case of *Norfolk and Portsmouth Traction Co.* v. *Norfolk,* 115 Va. 169, 78 S. E. 545, Ann. Cas. 1914D, 1067, the city of Norfolk recovered against the traction company a judgment for the entire cost of repaving the track area, including all material and labor. The company claimed it was responsible for the labor costs only under the terms of an ordinance similar in terms to the ordinance we are considering—the 9th clause of the charter under which the work in the instant case was done. The court denied that contention, holding that the legislative provision in the charter of the company was paramount, and the charter requiring the company to "keep that portion of the streets occupied by its track or tracks, embracing the space between said tracks and a distance of at least two feet beyond the outer rails thereof, well paved and in good repair, without expense to the corporation of the city of Norfolk" imposed upon the company the duty of conforming its work to the policy of the city, and required that it should pay the entire cost of paving in the track area, without reference to any division of the cost between material and labor. It appears incidentally in that case that when the city constructed the pavement in the track area, it also laid an extra concrete base under

the tracks similar to the concrete base involved in this controversy. As the court held that the company was liable for the entire cost, it was not necessary to consider that portion of the work separately. The court, however, in its opinion makes one reference to the extra work as follows (page 175) [78 S. E. 547]:

"It is conceded that the materials furnished and work done on the extra concrete base were rendered necessary by the increased size and weight of the defendant's rails and rolling stock, and was of no benefit to the city except to prevent damage to the surface of the street from inadequate foundation."

It would rather seem from this statement that the court considered that this portion of the work should, in any event, be paid for by the company, as properly a part of its construction duty and within its liability to keep the track area well paved and in good repair.

In applying the provisions of the ordinance involved in the instant case to the issue presented here, the undertaking of the city to pay for the material used in paving the street, and the duty of the company to keep the track area in *thorough repair*, are to be considered together. Construing the ordinance provisions strictly in favor of the city, our conclusion is that when the city was having the paving work done it was only required to furnish and pay for such amount of material for the track area as was used by it in paving the general surface of the street, and that when it became apparent that the construction of the concrete base was necessary as a permanent bed upon which the rails and ties should rest in order to insure proper operation of the cars by the railway company, and in order to prevent injury to the surface of the street and so keep that surface in thorough repair, the expense incurred in providing the concrete base for the company should be

paid by the company. The base is not properly a part of the *paving*, as it arose from the necessity for a foundation to give a proper bed or support for the rails and cross ties. It was a necessary part of track construction and was essential in order that the railway should operate its cars so as to comply with its duty to keep the street within its area in thorough repair. We can deduce no fair inference from the ordinance that the city intended to pay for such construction in connection with its stipulation to pave the surface of the street for public use and travel.

The necessity for the concrete base, the character of the work, and the amount expended in laying it are not questioned.

While we find no authority in which this exact question was discussed, the effect we give to the ordinance is in harmony with the reasoning in the two Virginia cases referred to, and with the trend of the decisions generally in cases concerning the duty of street railways as to paving and repairing in the track area.

Many cases touching franchise duties of this character imposed upon street railway companies may be found in the notes appended to cases reported in 33 A. L. R. 128, and in 10 A. L. R. 910.

In the view we take of the case it is unnecessary to pass upon other questions raised by counsel in argument.

For these reasons the judgment of the circuit court will be affirmed with costs.

*Affirmed.*