APPALACHIAN ELECTRIC POWER COMPANY *v.* THE CITY
OF HUNTINGTON

(No. 8034)

*and*

APPALACHIAN ELECTRIC POWER COMPANY *v.* THE CITY
OF HUNTINGTON

(No. 8081)

Submitted November 1, 1934.   Decided November
27, 1934.

*Okey P. Keadle,* for plaintiff in error and respondent.
*Vinson, Thompson, Meek & Scherr,* for defendant in error and relator.

KENNA, JUDGE:

The Appalachian Electric Power Company brought notice of motion against the City of Huntington in the circuit court of Cabell County and, upon an agreed statement of facts and submission to the trial judge in lieu of a jury, recovered in the sum of $96,928.32. The City of Huntington prosecutes this writ of error.

On November 21, 1930, the city and the power company entered into a ten-year contract for street lighting. The contract was based on the then existing lighting system of the city, and provided that the city might require the installation of additional lights and that it could, at its discretion, discontinue the then existing lights to the

extent of ten per cent, any additional lights to be considered as an increase in the minimum number required to be burned. The rate to be charged per lamp is fixed by the contract as are the hours during which they were to be operated.

On January 16, 1931, the city notified the power company to install and to supply with current what is known as the Twentieth Street Monolite System.

On August 14, 1931, the mayor notified the company in writing that the city's position was that the resolution of council which had ordered the installation of the Twentieth Street Monolite System was void, since there had been no budgetary provision made by the city to pay therefor.

On November 7, 1932, the city entered into an agreement with the power company for the installation of what is called the Downtown Monolite System, naming the streets and parts of streets upon which it should be installed, and providing for approximately 472 standards and lamps, for all of which the city agreed to pay the flat sum of $4583.34 for the period from August 1, 1932, to June 30, 1933, the life of the contract. This contract contains an express provision that the contract of November 21, 1930, should not be affected by it.

On September 30, 1933, the city notified the power company that it had no funds to pay for water, lights and gas for the fiscal year ending June, 1934. After receiving this notification, the company continued to supply its accustomed service under the arrangement it had with the city, with the exception of the supplying of current to the Downtown Monolite System, which it had discontinued in March, 1934.

The city has paid in full for the services under the contract of November 21, 1930, to and including May, 1931, and has made payments on account for June, 1931, to July, 1932, inclusive. The amount due under that contract, according to its terms, for which the power company seeks recovery, is $83,681.53, with interest from May 21, 1934.

Under the contract of November 7, 1932, the city has paid in full, to and including September, 1932. There is alleged to be due and owing under this contract $7,-500.06, with interest to May 31, 1934, being the charges from October, 1932, to March, 1934 (when this service was discontinued), inclusive. The sum of $3,437.50 of this amount is for service supplied since June 30, 1933, the expiration date of this particular contract. This amount, the city contends it should not be required to pay.

The city's obligation to meet the payment falling due under its contract of November 21, 1930, is disposed of by the case of *Huntington Water Corporation* v. *The City of Huntington,* argued and submitted with this case, and already decided. There, on a similar state of facts in so far as this question is concerned, it was held that payments due from year to year under a contract for a term of years made before the adoption of the tax amendment, constituted an indebtedness of the city pre-existing the adoption of the tax amendment, even though such contracts are not to be regarded as creating a debt at the time they are entered into in the aggregate amount of all the yearly payments to be made for the entire term of the contract. Being a debt pre-existing the effective date of the tax limitation amendment, the creditor is entitled to the benefit of a tax structure in all substantial respects equivalent to that existing at the time of contract, and the capacity of the city to make payment under its terms, cannot be substantially impaired by later constitutional or statutory provisions. The matters arising on this question were fully discussed in the case referred to and need not be reiterated here.

In this case, however, the city makes the further contention that after having been notified that the city was without funds to meet its obligations within the levies permitted by law, the power company should have curtailed its service to the city's minimum requirements, thus reducing its damages under a contract that it was obvious the city must breach. The rule sought to be applied is an equitable rule that in our opinion has no place

here. Had the city indicated that it desired a certain curtailment of service, a different case might have been made. It could not require the power company to decide what service would meet the city's minimum requirements and curtail to that point at the risk of a breach on its part.

The remaining questions affect the Twentieth Street Monolite System installed under the resolution and letter of January 16, 1931, and the Downtown Monolite System installed under the formal contract of November 7, 1932.

As to the Twentieth Street Monolite System, it is contended that it was not installed under the basic contract of November 21, 1930, because the time for burning the lights was different, as was the amount to be paid per unit. We think that a reading of the contract in question discloses that the city intended to contract for its requirements in electric lighting and make provision for the reasonable expansion of those requirements under the terms of the contract. We do not believe that comparatively immaterial departures from the terms and conditions laid down in the contract of November 21, 1930, would, in the absence of direct proof of an intention to depart therefrom, constitute, as a matter of law, the creation of a new contract where all of the circumstances seem to indicate that the purpose to provide for the extended service was to do so substantially within the provisions of the original contract. Plaintiff in error seems to be of the belief that if this additional provision is not within the terms of the contract of November 21, 1930, and if it is to be regarded as a separate contract entered into January 16, 1931, that the city is relieved of liability to pay for service rendered under it, because, in the budget for the year 1930-31, no provision was made for such payment. This argument is advanced, not on the basis of the budget law of the city, but on the basis of Code, 11-8-13, providing that no fiscal body shall enter into a contract the performance of which involves the expenditure of money in excess of funds legally at the disposal of the fiscal body. We do not understand that the term "legally at the disposal" as used in this section is neces-

sarily controlled by the budgetary items for the fiscal body. A budget is usually nothing more than a balance sheet of estimated receipts and expenditures, and the credit side might not come up to the municipality's capacity to lay levies under its financial resources, and the debit side may contain a great many items not properly there, when viewed as contractural obligations of the city existing at the time that the contract to be tested was made. It is not contended that, at the time the contract was made, the city had, before levy, obligated its entire levying power, or, after levy, had obligations that absorbed the entire amount thereof. We think the difference between a budget and funds legally at the disposal of a fiscal body is too apparent to require extended discussion or citation of authority.

As to the Downtown Monolite System, the contention of the city is that its liability should be restricted to the terms specified in the contract and to the service during that term for which alone it expressly undertook to pay. On the other hand, the power company contends that the city must pay for benefits received, that at the end of the specified term it continued to render the service, that the city received it, got the benefit of it and now must pay for it. We are not called upon to pass upon the question of whether a municipality might be held by implied contract for a full extended term of a service agreement as on a renewal, because here the only claim is for benefits actually accepted and received by the city, and not for any part of an extended term during which no benefits were in fact received. It is well settled law in West Virginia that a municipality is, to the extent that it might be bound on express contract, equally bound by implied contracts to pay for benefits received at the instance and request of its proper agent and with its knowledge and consent. *Cade* v. *City of Belington*, 82 W. Va. 613, 96 S. E. 1053. The question of whether this item should be included in the mandamus for the enforcement of the judgment, not being raised and argued, we do not pass upon it, but award the writ as prayed.

For the reasons hereinbefore stated, we are of opinion

594

that there is no error in the judgment of the trial court, which will therefore be affirmed, and the writ of mandamus, petition for which is pending here, based upon this judgment, in which the respondent city defends upon exactly the same questions as are here decided, will be awarded.

*Judgment affirmed; mandamus awarded.*