Mountain State Water Company *v.* Town of Kingwood

(No. 9014)

Submitted April 30, 1940.   Decided June 4, 1940.

*Kittle & Kittle* and *Ira E. Robinson,* for plaintiff in error.

*Charles P. Wilhelm* and *F. E. Parrack,* for defendant in error.

RILEY, PRESIDENT:

In this motion for judgment proceeding, instituted in the Circuit Court of Preston County, Mountain State Water Company, a corporation, seeks to recover from the Town of Kingwood, a municipal corporation, the sum of $4,531.33, with interest, upon an account "for public fire protection" from January 1, 1933, to May 25, 1937. Upon an agreed statement of facts, the trial court found for defendant, and this writ of error is prosecuted to a judgment entered on that finding.

The notice herein was amended pursuant to the decision of this Court had on certificate *(Mountain State Water Co.* v. *Town of Kingwood,* 121 W. Va. 66, 1 S. E. [2d] 395). From the amended notice and the statement of facts, it appears that by ordinance of August 18, 1913, defendant granted to one Carlton C. Pierce, trustee, his successors and assigns, a fifty-year franchise to construct, maintain and operate water mains, etc., in the town for the purpose of supplying the residents thereof with water for domestic and other purposes and for conducting water through the town for others than residents, together with the right to sell to residents and others water at such rates as shall from time to time be in effect under proper authority. The ordinance further provides, in section 2 thereof, that "fire hydrants shall be set at such place (s) as may be from time to time designated by said Council and will be paid for at such rates as may be fixed

by competent authority from time to time; provided that in setting all hydrants due consideration shall be given to the returns in rentals to be realized by Grantee from the same."

Plaintiff succeeded to Pierce's rights under the franchise. On March 14, 1932, the Public Service Commission of West Virginia entered an order which provides that "the public fire protection charge" be reduced from $2500.00 to $2100.00 per year, and recites that it was entered upon the representations of the Town of Kingwood by its mayor and recorder "that said rates are agreeable to the said town except that the fire protection charge be reduced from $2500.00 to $2100.00 per annum,". As to the town's agreement to the reduction of the charge for fire protection, the agreed statement of facts reads:

"That no order was ever entered on the minute books of the Council of the Town of Kingwood, agreeing to accept such rates, or authorizing its mayor and recorder or either of them to write said letter. That there was a formal discussion of the matter by the mayor, recorder and member(s) of the Council of said Town a short time prior to March 14, 1932, but which was not made a matter of record, from which conversation said mayor and recorder believed that it was agreeable to all of the then members of the Council of said Town of Kingwood for said Public Service Commission of West Virginia to fix temporarily the rate of twenty-one hundred (2100) dollars per year for water to be furnished said Town by said Mountain State Water Company for fire protection, flushing of hydrants and cleaning of streets, such rate to continue only until the Public Service Commission completed its investigation of the water rates in Kingwood to determine what was a fair rate therefor, such rate not to continue longer, however, than January 1, 1933, but no further order of said Public Service Commission relative thereto was made, and no further investigation of said matter was made by said Commission."

Defendant paid in full the amount claimed by plaintiff for the year 1932, and from January 1, 1933, until May 25, 1937, the date of the affidavit attached to the notice herein, it paid plaintiff at the rate of $864.00 per year. The statement of facts recites, in effect, that, if plaintiff is not entitled to more than $864.00 yearly, over the period from January 1, 1933, to May 25, 1937, inclusive, there can be no recovery herein, and if plaintiff is entitled to recover in this proceeding, the amount thereof shall be $4,531.33, with interest from May 25, 1937, until paid. Prior to January 1, 1933, and from time to time thereafter, until the institution of this proceeding, defendant insisted that it could not legally pay more than $864.00 per year; and, at all times after 1932, until this proceeding was instituted, plaintiff demanded that defendant accept the services and pay therefor $2100.00 per year.

The trial court rendered a written opinion—a part of the record—to the effect that it found nothing in the franchise which gave rise to a valid continuing contract made prior to the tax limitation amendment binding defendant to purchase fire protection; that, under the statement of facts, defendant agreed to pay at the rate of $2100.00 a year but only to January 1, 1933; and that a levy of more than $864.00 annually for fire hydrants, over the period declared on in the notice, would be violative of the tax limitation amendment. Section 1, article X, Constitution of West Virginia, as amended under the provisions of chapter 9, section 1, Acts, West Virginia Legislature, Ex. Sess., 1932.

Two main issues are raised by the several pleas to the notice: (1) was there a valid and continuing contract between the parties; and (2) is the tax limitation amendment a bar to plaintiff's claim?

Of course, if a valid contract came into being prior to the adoption of the tax limitation amendment, it could not be impaired by the amendment. *Bee* v. *City of Huntington,* 114 W. Va. 40, 171 S. E. 539; *Huntington Water Corporation* v. *The City of Huntington,* 115 W. Va. 531, 536, 177 S. E. 290; *Appalachian Electric Power Co.* v. *The*

*City of Huntington,* 115 W. Va. 588, 591, 177 S. E. 431. These cases represent fundamental law too vital under our constitutional form of government to be departed from by this Court on this or any other occasion.

Defendant's counsel say that it was not bound by any continuing contract for fire protection and, therefore, the tax limitation amendment intervened to prevent the payment of more than $864.00 per year for fire protection, beginning January 1, 1933. It is also contended (1) that a contract, if one did exist between the parties, must be found in the franchise and the subsequent course of dealings; and (2) that the order of the Public Service Commission is invalid because (a) application for the reduction in the charge for fire protection was unauthorized by the town council, and, (b) the order itself is uncertain.

Unlike the usual rule governing the construction of contracts, franchises should be construed strictly in favor of the municipality granting them. 1 Pond, Public Utilities, sec. 152; *Durham Public Service Co.* v. *Durham,* 261 U. S. 149, 67 L. Ed. 580, 43 Sup. Ct. 290; *Virginia Ry. & Power Co.* v. *City of Norfolk,* 147 Va. 951, 133 S. E. 565. Notwithstanding this rule, section 2 of the franchise lends itself readily to a construction in plaintiff's favor. It provides that fire hydrants shall be set at such places as may be from time to time designated by the council of defendant town. Surely, the language is clear. It means that defendant was given the right, through its council, to designate places where fire hydrants should be set; and, as this section reads, in part: "Said grantee shall so construct said lines", etc., and "fire hydrants shall be set", etc., it would seem that expressly plaintiff was charged with the duty to set said fire hydrants at places designated by the council. The hydrants are referred to as fire hydrants and evidently were to be used for fire protection. It seems to us they should be placed in sufficient number, no more or less than required for fire protection. This section also provides that "the hydrants * * * will be paid for at such rates as may be fixed by

competent authority." Paid for by whom, and at what rates, defendant asks? The evident answer is the defendant town for whose benefit the hydrants were to be placed, and at such rates as may be fixed by the Public Service Commission of West Virginia, which, under Acts, West Virginia Legislature, 1913, chapter 9, sections 3 and 5 (Code, 24-2-1 and 2), then, as now, was and is the only public authority vested with power to regulate water companies and other public utility companies operating within the state and the rates and charges made by them. But, say defendant's counsel, the provision to the effect that "in setting all hydrants due consideration shall be given to the returns in rentals to be realized by Grantee from the same" is senseless, meaningless, unless payment is anticipated from others than the defendant. Suffice to say that if defendant's council had intended payment from any one other than the municipality itself, the ordinance creating the franchise would have so specified; and, in addition, we suggest there is no inconsistency between the provision of the section under attack and the rest thereof. This provision of section 2 is simply a measuring rod to determine the number of fire hydrants, so that the number of hydrants should not be inconsistent with the amount of compensation to be received.

The order of the Public Service Commission is not invalid. It recites that it was entered upon the representations of the town by its mayor and recorder and the statement of facts contains verbatim a copy of the letter, dated March 12, 1932, advising the Public Service Commission that the council had in regular meeting agreed with the representative of the water company to the same rates as established under temporary agreement in 1931, except that the rate paid by the town for fire protection was to be $2100.00 instead of $2500.00 per year. True, the record discloses no formal minutes or any action by the town council, and the statement of facts discloses that from a formal discussion between the mayor, recorder and members of council, the two officers believed it was agreeable to all the then members of council for the Pub-

lic Service Commission to fix "temporarily the rate of twenty-one hundred (2100) dollars per year for water * * * for fire protection", etc., to continue only until the Commission had, after having completed an investigation, determined what was a fair rate therefor, "such rate not to continue longer, however, than January 1, 1933." The recital of the belief entertained by the two officers of the town is not of itself a denial of the existence of a contract between the plaintiff and defendant or authority of the town officers to write the letter to the Public Service Commission and represent the town in the proceedings upon which the order was entered. After the order was entered, the defendant town paid for fire protection on the basis of $2100.00 per year during 1932, and, as shown by the reference in the statement of facts to the notice herein, it actually received the benefits of the services for which payment is sought in this proceeding. These facts indicate that both parties regarded the existence, at least, of a tentative rate of $2500.00 for fire protection, which was reduced to $2100.00 by order of the Commission, and the council knew of the action of the town's officers and acquiesced therein, otherwise it would not have authorized the payment on the basis of $2100.00 per annum during 1932. Under the circumstances the fact that no record was made in the minutes of the council is of no importance. Defendant did not indicate how, if at all, curtailment of services was desired, and no application was made to the Public Service Commission for another order providing for a still further reduction in the charge for fire protection.

The franchise, the order of the Public Service Commission of West Virginia, and the course of dealings between the parties, including the acceptance of benefits, in our opinion, gave rise to an express contract between plaintiff and defendant for the payment for "fire protection" on the basis of $2100.00 which was not impaired by the tax limitation amendment. *Huntington Water Corporation* v. *The City of Huntington, supra; Appalachian Electric Power Co.* v. *The City of Huntington, supra.*

Moreover, defendant town had the power to contract expressly for the services. A contract such as the one sought to be established is not against public policy; nothing in general statute limited the mode of execution of a like express contract, and defendant is a corporation whose powers are enumerated under general statute only; the members of the council evidently had knowledge of the reduced rate and tacitly gave consent thereto, as we have heretofore suggested; and the town received the benefit of the services for which compensation is claimed. So it follows that even if there had been no express contract, there was one implied in fact. *Cade* v. *City of Belington*, 82 W. Va. 613, 96 S. E. 1053; *Appalachian Electric Power Co.* v. *The City of Huntington, supra.*

Defendant's counsel rely upon the statement in the opinion in the last-mentioned case to the effect that a different case might have been made had the city indicated that it desired *a certain curtailment of service*. But this Court also said in that case that the city could not require the power company to decide what service would meet the city's minimum requirements and curtail to that point at the risk of a breach on its part. The case does not stand for the proposition, for which defendant's counsel cite it. If there was a binding contract between the parties, plaintiff and defendant here, and defendant desired to bring about either a reduction in the charge for fire protection or a curtailment in the service accompanied by a reduction, application could have been made to the Public Service Commission. A municipal corporation, under the statute, has ample avenue of relief from exorbitant and excessive public utility rates and charges, but it does not lie at the hands of either a municipal corporation or a public utility company on its own initiative to alter a contract by which it is bound and to reduce or increase rates and charges without the consent of the other interested party and the approval of the Public Service Commission of West Virginia. The statutory law of this state must be followed where, as in the

instant case, it does not contravene constitutional inhibitions.

The fact that defendant in laying its levy did not provide for the full payment of $2100.00 beginning January 1, 1933, does not preclude plaintiff from recovery. The term "legally at the disposal" as used in Code, 11-8-13, is not controlled by the items of the budget of a fiscal body. *Appalachian Electric Power Co.* v. *Huntington, supra,* 592, of 115 W. Va., 177 S. E. at page 431.

For the foregoing reasons, the judgment of the Circuit Court of Preston County is reversed and judgment entered here in plaintiff's favor.

*Reversed; judgment here.*

MAXWELL, JUDGE, dissenting:

Believing that the town was not bound by continuing contract or by proper order of the Public Service Commission to pay $2100.00 annually for public fire protection, I would affirm the judgment of the trial court.