THE CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF WEST VIRGINIA

v.

THE CITY OF MORGANTOWN

(No. 11017)

Submitted February 3, 1959.    Decided March 3, 1959.

*H. William Largent, Geo. R. Farmer,* for appellant.

*Baker & Armistead, Charles G. Baker, Charles S. Armistead, John G. Fox,* for appellee.

CALHOUN, JUDGE:

In this declaratory judgment proceeding instituted in the Circuit Court of Monongalia County by The Chesapeake and Potomac Telephone Company of West Virginia against the City of Morgantown, an appeal was granted by this Court on October 20, 1958, at the instance of the city, from a final decree entered therein by the circuit court on June 25, 1958.

The purpose of the proceeding is to have a judicial declaration of the rights of the respective parties in connection with the use by The Chesapeake and Potomac Telephone Company of West Virginia, (hereinafter for purposes of convenience sometimes referred to as the "telephone company"), of the streets of the City of Morgantown, (hereinafter for purposes of convenience sometimes referred to as "the city"), for its poles, wires and other facilities, and particularly a declaration of the rights of the respective parties in relation to the city's resolution of June 25, 1957, which seeks to require the telephone company to remove all its facilities from the streets of the city.

Prior to the taking of testimony, by an order entered on February 15, 1958, the circuit court defined the issue in the following language:

"Thereupon, the Court, on its own motion, doth determine that the sole issue raised by the pleadings heretofore filed herein, and to be determined upon a hearing upon the petition, the amended petition and the answer, is the right of the plaintiff to continue to use and occupy the streets, alleys, public ways and public property of The City of Morgantown for the purpose of constructing, maintaining, extending and replacing its poles, wires, conduits and other facilities located therein, thereunder and thereover in the City of Morgantown, from and after

July 2, 1956, and also from and after one (1) year after June 25, 1957, that being the time in which the petitioner was notified by the defendant City to remove said facilities, as set forth in the notice exhibited with the amended petition; however, that the area of the defendant City comprising the Sixth Ward thereof is not involved in the issues herein determined."

To the action of the court "in so limiting the issues", the telephone company objected and excepted, but the defendant below made no objection thereto. By the final decree of June 25, 1958, from which this appeal is prosecuted the court held:

"* * * That the plaintiff had and has the right to continue to use and occupy the streets, alleys, public ways and public property of the defendant, The City of Morgantown, for the purpose of constructing, maintaining, extending and replacing its poles, wires, conduits and other facilities located therein, thereunder and thereover in the City of Morgantown from and after July 2, 1956, and also from and after June 25, 1958, the latter being the date on which plaintiff was notified by the defendant City to remove its facilities from said public property; subject, however, to the right in said City of Morgantown, to reasonably regulate the use of its streets, alleys and other public grounds by the plaintiff and to require the payment of reasonable, non-discriminatory fees by the plaintiff to cover the cost of such regulation."

After its judgment, as stated above, was orally announced from the bench, the court overruled the motion of the city to clarify its rulings in the following particulars:

"1. Whether said rights are to be enjoyed by the Plaintiff in perpetuity and without limit as to time, or shall be subject to termination in a lesser period of time.

"2. Whether Plaintiff's rights so declared are property rights and as such are transferrable to a vendee or successor of Plaintiff.

"3. Whether violation by the Plaintiff of reasonable regulations imposed by the Defendant City shall terminate such rights of the Plaintiff as herein declared."

In order to discuss the issues presented, it is necessary to state in some detail the facts which give rise to the controversy. The telephone company commenced its operations within the city by virtue of consent granted to it by a municipal ordinance, dated July 3, 1916. This ordinance, which is referred to in the record as a "franchise", gave to the predecessor of The Chesapeake and Potomac Telephone Company and its successors and assigns permission for a period of forty years "from the date of the passage hereof, to construct, maintain and operate its posts, poles, cables, wires and all other necessary overhead apparatus on, over and along; and its conduits, ducts, mains, pipes, cables, wires, manholes, terminal and distributing poles and all other necessary underground appliances, on, in, under and through the streets, alleys and highways within the limits of the City of Morgantown, in the County of Monongalia and State of West Virginia; and to use the property of other companies and to permit other companies to use its property, under such reasonable and safe rules and regulations as may be agreed upon by such companies, or said City may reasonably require." The ordinance then proceeded to provide for the manner in which telephone poles and other facilities should be placed on the streets and matters of a related nature. In Section 5 of the ordinance it was provided that the telephone company should provide for the city, "free of charge", ten individual line telephones.

The forty-year franchise expired on July 2, 1956. The Town of Sabraton on March 6, 1939, granted to the telephone company a similar permission to use its streets for a period of fifty years. On July 1, 1949, the Town of Sabraton became a part of the City of Morgantown. Hence the telephone company has a franchise permit which is still in effect in relation to that portion of the City of Morgantown.

Prior to the date of the expiration of the forty-year permit or franchise, the parties commenced negotiations for renewal thereof. Such negotiations continued over a period of months but finally broke down because of an inability of the parties to agree upon the terms thereof. This inability to agree upon a new franchise related: (1) To the term thereof, and (2) the amount of "a franchise fee".

In this background, the city, on April 9, 1957, enacted an ordinance requiring the telephone company to obtain annual permits for use of the streets and to pay therefor certain annual fees. On January 9, 1958, the Circuit Court of Monongalia County permanently enjoined the enforcement of such ordinance. This resulted in an appeal to this Court. *Chesapeake & Potomac Tel. Co.* v. *City of Morgantown*, 143 W. Va. 800, 105 S. E. 2d 260.

On June 25, 1957, the City of Morgantown, acting through its common council, passed a resolution which recited the expiration of the franchise on July 2, 1958, and the inability of the parties to agree upon the terms for a renewal thereof, and ordered the telephone company within one year thereafter "to remove from the streets, public ways and public grounds of the City of Morgantown, its property and facilities installed thereover, therein and thereunder."

The issue in the case was further simplified, during the taking of testimony before the circuit court, by the following statement on behalf of the telephone company which was made a part of the record:

"1. That Section 4 of the franchise agreement dated July 3, 1916, relating to the obligations of the telephone company to indemnify, protect and save harmless the City of Morgantown, is declaratory of the common law obligations of the telephone company, and that these obligations, on the terms set out in that section of the franchise, are continuing, and will continue so long as the apparatus of the telephone company remains under its control in the streets, alleys, and other public grounds of the city;

"2. That the City of Morgantown has, pursuant to its police power, the right reasonably to regulate the use of the streets, alleys, and other public grounds of the city by the telephone company, and to require the payment of reasonable, non-discriminatory, fees to cover the cost of such regulations."

It is conceded, therefore, and it was held by this Court in the case of *Chesapeake & Potomac Tel. Co.* v. *City of Morgantown, supra,* that the municipality has the legal right to charge reasonable, non-discriminatory fees for the regulation of the use of its streets by the telephone company. It appears further from the record that the telephone company has at all times been willing to submit to such reasonable fees and that the municipality has at all times been willing to grant to the telephone company a right to the continued use of its streets upon payment of a reasonable fee. This background seems, therefore, to present the precise question whether, upon the break-down of negotiations for a renewal of the franchise, the city has a right to compel the telephone company to remove its facilities from the streets of the municipality.

The Chesapeake and Potomac Telephone Company is engaged in both intrastate and interstate operations and is, therefore, subject to regulation by both the Public Service Commission of West Virginia and the Federal Communications Commission.

The word "franchise" is a generic term, having different connotations in different situations. The term is sometimes applied to the right of a corporation to act as such. It is sometimes used to denote the right of a public utility to serve a particular area. The right of a municipality to consent to use of its streets, as in this case, is sometimes said to be in the nature of a "consent" or "permit", rather than a franchise. Words and Phrases (Perm. Ed.), Volume 17, Franchise, pp. 689-746; Black's Law Dictionary (4th ed.) 786; *Brumley* v. *Grimstead,* 170 Va. 340, 196 S. E. 668, 675; *Greene Line*

*Terminal Co.* v. *Martin*, 122 W. Va. 483, 10 S. E. 2d 901, 903.

"Assent from town council to a railroad company authorizing the occupation of the streets of such town under section 10, chapter 52, Code, is not a franchise within the meaning of chapter 29, Acts 1901." Pt. 1 Syl., *B. & N. R. R. Co.* v. *Town of Alston*, 54 W. Va. 597, 46 S. E. 612. See also *Maxwell* v. *Central District Telegraph Co.*, 51 W. Va. 121, Syl. 2, 41 S. E. 125; *Montgomery* v. *Atchison*, 89 F. 2d 94, 96; *McPhee* v. *Union Pacific*, 158 F. 5, 15. "The primary object of all grants of franchise in the United States is to benefit the public. The primary object is not the procuring of revenue; efficient and reliable service at reasonable rates is far more important, and it is the direct object to be obtained." 37 C. J. S., Franchises, Section 3, p. 148. "The intention of the framers of the constitution or of the legislature enacting the statute must be sought and the word given the meaning intended by them. * * *." 37 C. J. S. Franchises, Section 1, p. 145.

In the case of *Chesapeake & Potomac Tel. Co.* v. *City of Morgantown, supra,* this Court referred to a constitutional provision requiring municipal consent for the operation of a street railway within a municipality as follows:

"* * * In Article XI, Section 5 of the Constitution, it is provided that: 'No law shall be passed by the Legislature, granting the right to construct and operate a street railroad within any city, town or incorporated village, without requiring the consent of the local authorities having the control of the street or highway, proposed to be occupied by such street railroad.' In construing an identical provision of the Constitution of Oklahoma, the Circuit Court of Appeals for the Tenth Circuit in the case of *City of Tulsa* v. *Southwestern Bell Telephone Co.*, 75 F. 2d 343, at page 352, held that, applying the doctrine of *expressio unius est exclusio al-*

*terius,* it follows that the Legislature may grant the right to telephone companies to occupy the public streets and highways without the consent of local municipal authorities."

We find no constitutional provision dealing with municipal consent relating to telephone companies. Prior to the enactment in 1913 of Code, Chapter 24, creating and defining the powers and duties of the Public Service Commission, various statutes had required consent of county courts or municipalities to the action of a telephone company in placing its poles and other facilities in roads and streets. Acts, 1907, Extraordinary Session, Chapter 13, required such consent of cities, towns and villages. This requirement was eliminated by Chapter 12, Acts of 1913, enacted upon the same day as the enactment of statutes creating the Public Service Commission.

Code, 8-4-15, provides, *inter alia,* that, when a public utility has obtained a right by franchise or ordinance to operate upon streets of a municipality, the circuit court shall have power by mandamus to enforce compliance therewith. However, when the revision of the Code became effective in 1931, there was inserted the following language: "* * * (except so far as the powers herein conferred upon the circuit court are, by chapter twenty-four of this Code, conferred upon the West Virginia public service commission) * * *."

The revision and repeal of statutes in this respect evince a clear intent to give to the Public Service Commission certain powers which were theretofore conferred by statute upon municipalities and county courts. In this connection it is noteworthy that, whereas a charter previously granted to the City of Morgantown expressly conferred upon the municipality power to "* * * grant public franchise to be exercised within the city * * *", such provision is omitted from the city's present charter granted in 1933.

Chapter 24 of the Code creates the Public Service Commission and defines its powers. Article 2, Section 1 pro-

vides: "The jurisdiction of the commission shall extend to all public utilities in the State * * *." Article 2, Section 5 provides: "The commission shall have general supervision of all public utilities having authority under any charter or franchise of any city, town or municipality, county court, or tribunal in lieu thereof, or otherwise, to lay down and maintain wires, pipes, conduits, ducts or other fixtures in, over or under streets, highways or public places for the purpose of furnishing and distributing gas, or for furnishing and transmitting electricity for light, heat or power, or maintaining underground conduits, or ducts, for electrical conductors, or for telegraph or telephone purposes, and for the purpose of furnishing water, either for domestic or power purposes, and shall have general supervision of oil and gas pipe lines." Article 3, Section 1, provides that no utility shall discontinue any service or public service facility "* * * without first obtaining authority from the commission so to do * * *."

> "Municipalities are but political subdivisions of the state, created by the legislature for purposes of governmental convenience, deriving not only some, but all of their powers from the legislature. They are mere creatures of the legislature, exercising certain delegated governmental functions which the legislature may revoke at will. In fact, public policy forbids the irrevocable dedication of governmental powers. The power to create implies the power to destroy. * * *." *Booten* v. *Pinson,* 77 W. Va. 412, 421, 89 S. E. 985.

In the case of *Brackman's, Inc.* v. *City of Huntington,* 126 W. Va. 21, 27 S. E. 2d 71, this Court was faced with a conflict between state statutes, on the one hand, and, on the other hand, the provisions of the municipal charter, relating to licenses to sell nonintoxicating beer. Holding that State authority was paramount, the Court stated:

> "This is the crux of the matter. Either the State of West Virginia, acting through legislative authority delegated to its State Tax Com-

missioner, has final decision on who shall be entitled to sell non-intoxicating beer in the City of Huntington, or that power rests in the Council of said City. To state the question is to answer it. Whatever inconsistency or repugnancy may exist in the statutes, charters, ordinances and resolutions we have discussed must be resolved in favor of the State. Attached to every statute, every charter, every ordinance or resolution affecting, or adopted by, a municipality, is the implied condition that the same must yield to the predominant power of the State, when that power has been exercised. To hold otherwise would lead to serious confusion, and ofttimes absurd results."

The City of Morgantown by its charter is given certain powers to regulate the use of its streets. Such authority is given also by Code, 8-4-10, which provides, in part, as follows: "The council shall have plenary power and authority therein by ordinance or resolution as the case may require (*so far as such power or authority is not in conflict with the constitution and laws of this state,* or the constitution of the United States,) * * *" to regulate streets as further specified in such statute. (Italics supplied.)

The police power of the city reasonably to regulate the use of its streets is not denied. However, the authority of the municipality in regulating the use of its streets is not unlimited. In the case of *Ex parte Dickey,* 76 W. Va. 576, the Court, after referring to the superior right of the State, stated:

"It would be inconsistent with this theory, to say the legislature, in committing to county courts, villages, towns and cities, the control of such portions of the highways as happened to be within their limits, intended to make them absolute owners and proprietors of the same, with power to do as they please with them. Such municipalities own such portions of the highways for such public uses and purposes as the legislature by express declaration or implication recognizes as lawful. They hold them as agencies

of the state for such public uses and, therefore, they can limit, restrict or regulate such uses in such manner and to such extent only as the legislature has authorized. For the promotion of local comfort, convenience, and prosperity, the legislature has empowered them to establish, maintain and improve highways and given them authority to raise money by taxation for such purposes; and at the same time, it has compelled them to assume not only the burden of construction and maintenance, but also liability for injuries occasioned by defects. Nevertheless, it would be inconsistent with sovereign legislative power and control over the highways to infer from this agency legislative purpose to confer upon local municipalities power to deny any right of the public in them. Therefore, such authority does not exist, unless it has been expressly or impliedly conferred."

The paramount design of pertinent statutes to place regulation and control of public utilities exclusively with the Public Service Commission has been recognized previously by this Court. *Lockard* v. *City of Salem,* 127 W. Va. 237, 32 S. E. 2d 568; *City of Mullens* v. *Power Co.,* 122 W. Va. 179, 7 S. E. 2d 870; *Mountain State Water Co.* v. *Town of Kingwood,* 122 W. Va. 374, 9 S. E. 2d 532; *Ex Parte Dickey,* 76 W. Va. 576, pt. 3 syl., 85 S. E. 781; *Benwood* v. *Public Service Commission,* 75 W. Va. 127, pt. 5 syl., 83 S. E. 295; *Wheeling* v. *Natural Gas Co.,* 74 W. Va. 372, pt. 6 syl., 82 S. E. 345.

Statutes relating to the same subject matter must be read and applied together, whether passed at the same or different times. *State ex rel. Schroath* v. *Condry, Commissioner,* 139 W. Va. 827, 83 S. E. 2d 470. "A statute intended by the lawmaking body to become effective as part of a general system of law will be so construed as to operate in harmony with such system, and not to contravene or infringe upon it, if the terms, fairly and reasonably considered, will permit such construction." *State ex rel. Revercomb* v. *O'Brien,* 141 W. Va. 662, 669, 91 S. E. 2d 865. See also *State ex rel. Constanzo* v. *Robinson,* 87 W. Va. 374, 104 S. E. 473; *State*

*ex rel. Kelley* v. *City of Grafton,* 87 W. Va. 191, 104 S. E. 487; *City of Lynchburg* v. *Dominion Theatres,* 175 Va. 35, 7 S. E. 2d 157. "When a municipal ordinance is opposed to the policy of the state in relation to the subject matter thereof and in conflict with the statute of the state in relation thereto, the ordinance is void to the extent of its conflict with the statute and should not be enforced." Pt. 1 syl., *State ex rel. Wells* v. *City of Charleston, et al.,* 92 W. Va. 611, 115 S. E. 576. Statutes relating to the same subject should be harmonized, if possible. Repeal by implication is not favored. *Belknap* v. *Shock,* 125 W. Va. 385, 24 S. E. 2d 457.

Provisions in the city's charter and in Code, 8-4-10, granting to the city power to regulate the use of its streets; and Code, 8-4-15, authorizing the city to grant franchises, subject to the powers conferred upon the Public Service Commission; and Code, Chapter 24, creating the Public Service Commission and defining its duties and powers, though *pari materia,* are not in irreconcilable conflict. The Public Service Commission does not have "jurisdiction" to usurp or interfere with the police power of a municipality in the control of its streets. *City of Bluefield* v. *Commission,* 94 W. Va. 334, pt. 3 syl., 118 S. E. 542. Nevertheless, when the city's easement in its streets "* * * is acquired by the city it carries with it the right to use the street for street cars, for wires of telephone, telegraph and electrical lighting companies, * * * and such other similar arrangements for communication or transportation as future invention may make desirable." *Fox* v. *City of Hinton,* 84 W. Va. 239, 242-243, 99 S. E. 478. See also *Herold* v. *Gas Co.,* 141 W. Va. 182, 90 S. E. 2d 451, 456.

Code, Chapter 24, Article 2, Section 1, provides: "The jurisdiction of the commission shall extend to all public utilities in this State"; and Code, 24-3-1, provides that no public utility shall discontinue any service or public service facility "without first obtaining authority from the commission to do so." *Railroad Co.* v. *Transportation Co.,* 25 W. Va. 324; *Lockard* v. *City of Salem,* 127 W. Va.

237, 32 S. E. 2d 568. These and related statutes disclose a clear legislative policy, for the public good, to place the regulation of public utilities under State control. Such statutes are paramount to rights given to the city, by charter and by general statute, reasonably to regulate the use of its streets.

Sustaining generally the proposition that the power of a municipality to regulate the use of its streets and the power of a municipality to grant franchises or permits to utilities for the use of such streets must yield to the paramount right of the State to regulate public utilities, are the following: *Southern Bell Telephone* v. *Richmond,* 78 F. 858; *State* v. *City of Sheboygan,* 111 Wis. 23, 86 N. W. 657; *City of Zanesville* v. *Zanesville Telegraph,* 64 O. 67, 59 N. E. 781, 52 L.R.A. 150; *Phoenix* v. *Sun Valley,* 64 Ariz. 319, 170 P. 2d 289; *Michigan Telephone Co.* v. *Benton Harbor,* 121 Mich. 512, 80 N.W. 386, 47 L.R.A. 104; *Seattle Electric Co.* v. *Seattle,* 78 Wash. 203, 138 P. 892; *Oro Electric Co.* v. *Railroad Comm.,* 169 Cal. 466, 147 P. 118; *City of Geneseo* v. *Illinois,* 378 Ill. 506, 39 N. E. 2d 26; *Carthage* v. *Central New York Telephone,* 185 N. Y. 448, 78 N. E. 165; *People* v. *Mountain States* 125 Colo. 167, 243 P. 2d 397; *Lorain Street* v. *Public Utilities Comm.,* 148 N. E. 577, 113 O. St. 68; *Chicago* v. *Hastings Express Co.,* 369 Ill. 610, 17 N. E. 2d 576; *Tulsa* v. *Southwestern Bell Telephone Co.,* 75 F. 2d 343; *Willits* v. *Pennsylvania Public Utility Com'n.,* 183 Pa. Super. 62, 128 A. 2d 105; *Winfield* v. *Public Service Com'n.,* 187 Ind. 53, 118 N. E. 531; *Jennings* v. *Connecticut,* 140 Conn. 650, 103 A. 2d 535; *Geneseo* v. *Illinois,* 363 Ill. 89, 1 N. E. 2d 392; *Dakota Central Tel.* v. *City of Huron,* 165 F. 226; 5 A.L.R. 36; 39 A.L.R. 1519.

The telephone company cannot lawfully terminate its service to the City of Morgantown without the permission of the Public Service Commission. The city, therefore, cannot require the telephone company to remove its facilities from the streets of the municipality. 112 A.L.R. 630; *City of Louisville* v. *Cumberland Telephone,* 224 U. S. 649, 32 S. Ct. 572, 56 L. ed. 934; *Miller* v. *Mil-*

*ford,* 276 N. W. 826, 114 A.L.R. 1423; *Vandalia* v. *Postal Telegraph,* 274 Ill. 173, 113 N. E. 65, Ann. Cas. 1917E 523.

This answers the basic question raised by the pleadings. Under the Uniform Declaratory Judgments Act, a court has jurisdiction to consider and declare the rights of the litigants only in relation to actual controversies. Neither the circuit court nor this Court has jurisdiction in such a proceeding to make declarations relating to matters which may or may not be subjects of actual controversy between the litigants at some future time. Therefore, the circuit court properly overruled the motion made on behalf of the city to clarify or expand its holding in relation to matters which are not now made matters of actual controversy by the pleadings. *Crank* v. *McLaughlin,* 125 W. Va. 126, 23 S. E. 2d 56; *South Charleston* v. *Board of Education,* 132 W. Va. 77, 50 S. E. 2d 880.

In the case of *Marmet Gas Co.* v. *Marmet,* 102 W. Va. 605, 135 S. E. 839, the Court stated that the gas company had no authority to use the streets of the town in extending its system without the permission of the municipality. We do not consider such observation by the Court at variance with the views herein expressed. Such language was not carried into the syllabus of the case. The question of the authority of the Public Service Commission was not considered. Finally, it appears from the body of the opinion that the Court merely approved an amicable adjustment by the parties of the matters in controversy. That is, it appears from the opinion that the gas company relinquished all claims of any right to extend its system within the municipality.

For the reasons stated, the judgment of the Circuit Court of Monongalia County is affirmed.

*Affirmed.*